**Robert E. VAUGHN, Appellant,**

v.

**James W. RIPLEY, Respondent.**

**No. 24610.**

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1967.

Hensley, Rahm & Braton, Warrensburg, Harold L. Caskey, Butler, for appellant.

E. J. Murphy, Butler, Felix V. Gross, Pleasant Hill, for respondent.

**L. F. COTTEY, Special Judge.**

Plaintiff sued on an account and defendant pleaded payment. Thereafter, the case enjoyed a respite from professional attention for approximately six years. Then it was ordered tried and counsel for both sides were notified of the setting. Defendant did not appear on the appointed day, but plaintiff did, and, at a hearing before the court, took judgment for $2,956.62. A few days later, on learning of the result, defendant moved to set aside the judgment, alleging that he had a meritorious defense which he had been prevented from asserting by a combination of circumstances that were detailed in the motion. Plaintiff responded with a spirited denial and the dispute, more than a little tinged with rancor on the part of the contending attorneys, was submitted to the court. At the conclusion of the hearing the court took the matter under advisement, announcing that a decision would be reached the following day. On the following day and within the 30-day period prescribed by Civil Rule 75.01, V.A. M.R., the court tactfully overruled the

pending motion but entered an order, on the court's own motion, setting aside the judgment and directing a new trial for the assigned reason that "defendant has been deprived of his day in court." Plaintiff appeals. The only question is whether the court acted beyond the permissible limits of judicial discretion under the circumstances shown.

The evidence at the hearing was to this effect: The attorney who had filed the suit for plaintiff and the attorney who had represented defendant during its pendency, both being able and reputable members of the bar of their neighboring communities, had been acquainted with each other on a first-name basis for a long time. Over the years they had come to deal with each other in a friendly and informal manner, with every indication of mutual esteem. Two or three days before the scheduled trial date, in a telephone conversation between them, defendant's attorney told plaintiff's attorney that it would be inconvenient for him to take up the case on the date set, and asked him to agree to a continuance. Plaintiff's attorney countered with an offer to settle the case for $500.00, and, when that was disparaged, declined the request for a continuance; but not so emphatically, it seems, as to preclude the possibility of its being reconsidered if renewed for a sounder reason. With that idea in mind, apparently, defendant's attorney called his client and learned from him that because of an emergency at the bank where he was employed it would not be possible for him to appear on the date set without real hardship. Counsel then called the trial judge, explained the situation, inquired if another trial date in the near future was available, and was informed that a six day later date was open. Armed with that information, he called plaintiff's attorney again, made a new request, and was again refused. Now it may very well be that a six day postponement of a case that has lain dormant on the docket for nearly six years by mutual consent is not an extravagant request to make, especially for good reason, and it is under-

standable that counsel might have looked forward with confidence to its being granted. But he took an even more sanguine view. He *assumed* that the refusal of his request was simply a good-humored jest and that plaintiff's attorney would not actually call the case up until the latter date. Acting on that assumption, without any formal application for a continuance and without further communication with his adversary, he notified his client that a postponement had been arranged and that it would not be necessary for him to appear on the earlier date. Thus it was that neither of them was present when the judgment was taken.

Counsel for both sides seem to be under the impression that the decision on this appeal will turn on the question of who was right and who was wrong in the affair that culminated in the judgment below. But an approach by that path is more apt to lead us around the problem than to it. The question before us is whether the trial court abused its discretion by setting aside the judgment and ordering a new trial. By the very terms of the rule under which that action was taken, its propriety must be judged by whether it was taken "for good cause." The rule was not designed to censure wrong, but to right it. The private quarrel of the lawyers is therefore a distraction, not an aid, to the inquiry. Error implies fault. "Good cause" for remedying it begins with that premise and concerns itself only with whether the fault should be excused or extenuated in the interests of justice. The term "good cause", as used in this connection, is not susceptible of precise definition, but it was obviously coined to serve a remedial purpose in a matter addressed primarily to the conscience of the court and it should therefore be interpreted with commensurate liberality, not only to prevent a manifest injustice but to avoid a threatened one, especially in cases tried without a jury where evidence on one side only is presented. Long v. Stilwell Homes, Inc., Mo.App., 333 S.W.2d 103, 106. When a judgment has been set aside in con-

formity with that principle, the result ought not be overturned except for most cogent reasons directly affecting the administration of justice, for if the order be only doubtfully in error, the error is a transient one "and justice will yet be done on the merits.", Kollmeyer v. Willis, Mo.App., 408 S.W.2d 370, 380–1, and cases cited; De Maire v. Thompson, 359 Mo. 457, 222 S.W. 2d 93, 97. This is not to condone conduct intentionally designed or irresponsibly calculated to impede the work of the courts, but only to say that where a reasonable doubt exists, it should be resolved in favor of good faith.

■ The trial court's order in this case was in line with that principle. No doubt defendant's attorney presumed too far on his adversary's good nature, no doubt he acted without valid reason; but his sincerity is unquestioned. His fault was a lack of good judgment, not a lack of good faith. Because of it, an obviously blameless litigant has been deprived of a meritorious defense and saddled with a debt some six times greater than the amount for which the claim could have been settled. Whether that constitutes a deprivation of "his day in court"—that is, his "opportunity to be heard," 25A C.J.S., p. 476, and cases cited—in a literal sense, or whether the phrase was used in the order as a figure of speech to describe a comparable result, it is unnecessary to decide. In either event the order was so clearly proper that not a single authority has been called to our attention that could be said to be critical of it.

■ Plaintiff complains that the order was entered without notice and is therefore void, citing Hoppe, Inc. v. St. Louis Public Service Co., Mo.Sup., 235 S.W.2d 347, 348, where it was held that the trial court may not "make such order without reasonable notice to the parties to the action, and without giving them an opportunity to be heard as to the propriety of such order." In that case the court acted summarily and solely on its own initiative, without notice or warning of any kind.

There is not the remotest resemblance between that case and this. Here a motion was filed requesting the relief that was ultimately granted and specifying the grounds for it, and plaintiff was thereby put on notice that the court might grant it on its own motion, treating the pending motion merely as a "suggestion of defendant" that the action be taken. Harrison v. Weisbrod, Mo.App., 358 S.W.2d 277, 282. That is by no means all. Plaintiff replied to the motion, appeared at the hearing on the issue thus framed, argued every point that could conceivably have been raised in opposition to it, as the transcript shows, and, at the conclusion of the hearing, was pointedly informed by the court that a decision would be reached the following day. Thus he was accorded, and he exercised, every right to which he was entitled by law or logic.

The order is affirmed and the cause remanded for trial.

All concur.