**Hart B. DONNELL and Edna L. Donnell, Plaintiffs-Appellants,**

v.

**VIGUS QUARRIES, INC., a Corporation, and Fred Weber, Contractor, Inc., a Corporation, Defendants-Respondents.**

**No. 33684.**

St. Louis Court of Appeals, Missouri.

July 28, 1970.

Pannell, Dodson & Robinson, Festus, for plaintiffs-appellants.

Earl R. Blackwell, Hillsboro, for defendants-respondents.

DOERNER, Commissioner.

Plaintiffs, husband and wife, appeal from an order made by the court of its own initiative vacating a judgment and decree and granting defendants a new trial, which judgment and decree had been rendered in favor of plaintiffs when the defendants failed to appear on the day the cause was set for trial.

Prior to that date the case was at issue upon an amended petition filed by plaintiffs, an answer and counter-claim filed by defendants, and plaintiffs' answer thereto. The amended petition contained three counts. In Count I plaintiffs alleged that in June and July, 1966, the defendants had entered upon plaintiffs' land and with tractors, bulldozers and other earth-moving equipment had willfully, wantonly and maliciously " * * * destroyed all foliage covering one acre * * * " of plaintiffs' real estate and removed the topsoil therefrom, to plaintiffs' damage in the sum of $1,000. Their prayer was for judgment of treble damages of $3,000. In Count II plaintiffs averred that in June and July, 1966, on the property owned by defendant Vigus Quarries, which adjoined that of plaintiffs, defendants had so altered the channel of Plattin Creek as to erode plaintiffs' land and that the change in the channel would cause the erosion to continue; that defendants had also erected a bridge over said creek, on the land of defendant Vigus Quarries, which was inadequate in size to permit the flow of the creek during periods of high water, that the bridge had caused and would continue to cause additional erosion to the real estate owned by plaintiffs, and that defendants' actions had been committed willfully, wantonly, and maliciously. Plaintiffs' prayer was for actual damages of $2,000 and punitive damages of $10,000. Plaintiffs also prayed for an injunction enjoining defendants from maintaining the channel of Plattin Creek as relocated and the bridge crossing the Creek, and ordering the defendants to restore Plattin Creek to its normal channel. In Count III plaintiffs alleged that the defendants had willfully, maliciously and wantonly altered the course of a spring fed branch which flowed across the land of defendant Vigus Quarries so as to cause, and which would continue to cause, the ero-

sion of plaintiffs' real estate. Their prayer was for actual damages of $2,000, punitive damages of $10,000, and for a permanent injunction enjoining the defendants from maintaining said branch in its relocated channel and ordering the defendants to restore said branch to its normal channel.

The joint answer of the defendants to plaintiffs' petition was in the nature of a general denial. In the counter-claim filed by defendant Vigus Quarries it was alleged that said defendant was legally entitled to the possession of certain described premises, and that plaintiffs had entered into such premises and had unlawfully withheld possession thereof from said defendant, to defendant's damage in the sum of $25,000. By an amended answer plaintiffs denied generally the allegations contained in the counter-claim, and pleaded that the land described therein had been in the posses sion of plaintiffs and of plaintiffs' predecessors in title, openly, notoriously, and continuously under a claim of right for a period in excess of ten years prior to the filing of said counter-claim, and that title to said property was in plaintiffs by virtue of adverse possession.

Plaintiffs' original petition was filed on February 24, 1967 and service was obtained on both defendants on March 2 of that year. The record shows that thereafter the case was continued from time to time, at the request of one side or the other, until August 18, 1969, when defendants requested a continuance, at which time the matter was set for trial on September 19, 1969. Defendants did not appear, either in person or by counsel, when the case was called on that day, and after a recess had been taken the plaintiffs waived a jury and the hearing began. After plaintiffs' counsel had had certain exhibits marked he requested and was granted leave to amend Count I of plaintiffs' amended petition by inter lineation in two particulars. By the first the words "trees and timber" were added after the word "foliage" in paragraph 5 of Count I so that as amended the allegation charged the defendants with having will-

fully, wantonly and maliciously destroyed "all foliage, trees and timber covering one acre" of plaintiffs' real estate. By the second amendment, in the same paragraph, the words "in all of which timber, trees, topsoil and foliage the defendants have no right or interest" were added, so that paragraph 5, whch contained the allegation as to defendants' trespass and destruction, concluded with the phrase "in all of which said timber, trees, topsoil and foliage the defendants have no right or interest, all to plaintiffs' damage in the sum of One Thousand Dollars ($1,000.00)."

The transcript contains all of the evidence presented on behalf of plaintiffs, but in view of the court's action we do not deem it necessary to review such evidence other than to observe that while a prima facie case may have been made as to defendant Vigus Quarries, Inc., it was totally devoid of any evidence connecting the defendant, Fred Weber, Contractor, Inc., with the matters about which plaintiffs complained. At the conclusion of the hearing the court dismissed the counter-claim of defendant Vigus Quarries for failure to prosecute and rendered judgment in favor of plaintiffs and against both defendants for treble damages of $3,000 on Count I; actual damages of $2,000 and punitive damages of $2,000 against both defendants on Count II; and actual and punitive damages in the same amounts against both defendants on Count III. At the same time the court took under advisement the plaintiffs' prayer for the injunctive relief asked in Counts II and III, and five days later, on September 24, 1969, issued its decree. By that decree the defendant Vigus Quarries alone was enjoined and restrained from: (1) directing the flow of Plattin Creek in such a manner and direction as to continue to cause damage to plaintiffs' land; (2) from maintaining said bridge of such inadequate size across Plattin Creek on the land of said defendant; and (3) from directing the branch creek onto plaintiffs' land at a point other than at the channel of said creek as it existed immediately prior to the relocation of said branch creek by

defendants in June, 1966. Service of such injunction on the defendant Vigus Quarries was made by the sheriff on September 26, 1969.

On October 8, 1969, defendants filed a joint motion, titled "Motion to Set Aside Default Judgment," in which, in brief, they alleged that on the date judgment had been rendered defendants' counsel was actually in attendance at a session of the Missouri General Assembly; that plaintiffs were permitted to amend their petition on the date judgment was rendered, and neither defendants nor defendants' counsel received any notice of said amendment; that the judgment rendered was unconscionable both in the amount of damages and injunctive relief; that defense counsel received no notice of the trial setting; and that the defendants had a good and meritorious defense to plaintiffs' action as well as a meritorious cause of action against plaintiffs on defendants' counter-claim. That motion was heard by the court on October 14, 1969, at which defendants' counsel was the only witness and the court's entire file was introduced by him as an exhibit. Counsel's testimony and the court's records showed, in substance, that on August 14, 1969, when the court set the cause for trial on September 19, 1969, defendants' counsel was not present in person but that notice thereof was sent by the clerk by regular mail, which defendant did not deny had been delivered to his law office. Defendants' counsel also recalled receiving a long distance telephone call on August 14, 1969 from plaintiffs' attorney in which he agreed to any trial setting after September 1, but had no recollection (but did not deny) that the date of September 19 was stated as the trial date during the telephone conversation. Defendants' counsel also testified that he was not advised by his law office secretary of the trial setting, that he was not in his law office after September 6 or 7, and that he had no personal awareness of the date of the trial setting. It appeared from counsel's testimony that the trial date fell within the period of the 1969 special session of the General Assembly, which began on September 8, that as a member of that body counsel was in attendance and active in the General Assembly, and was actually in Jefferson City on its business on September 19, 1969, the date of the setting. Defendants' counsel also testified regarding the meritorious defenses to plaintiffs' action, particularly as to those factors which concerned plaintiffs' claims for treble damages and for punitive damages, and at the hearing stressed the lack of notice of the amendments to plaintiffs' petition which had been made at the beginning of the trial. Plaintiffs introduced no evidence in opposition to defendants' motion.

At the conclusion of the hearing the court took the matter under advisement, and three days later, on October 17, 1969, well within the 30 day period prescribed in Civil Rule 75.01, V.A.M.R., the court "tactfully overruled" (as expressed in Vaughn v. Ripley, Mo.App., 416 S.W.2d 226, 227) the defendants' motion and entered an order, on the court's own motion, setting aside the judgment and decree and granting defendants a new trial on all counts, conditioned upon defendants' payment of all costs accrued through that date, upon the grounds that defendants had been deprived of their day in court. Plaintiffs' appeal followed in due course.

■ The substance of the first point in plaintiffs' brief is that this appeal does not involve the setting aside of a default judgment as that term is used in Sections 511.-110, 511.140, RSMo 1959, V.A.M.S. We agree. It has long been the rule that where a defendant has appeared and the issues are made up, a judgment rendered when the defendant fails to appear when the case is duly set for trial is not a default judgment within the meaning of those statutes. State ex rel. Jones v. Reagan, Mo.App., 382 S.W.2d 426; Jackson Associates, Inc. v. Mosley, Mo.App., 308 S.W.2d 774; Dietrich v. Dietrich, Mo.App., 28 S.W.2d 418; National City Bank of St. Louis v. Pattiz, Mo.App., 26 S.W.2d 815.

In the second of their two points plaintiffs raise no question regarding the reason assigned by the trial court for its action, and as in Vaughn v. Ripley, Mo.App., 416 S.W.2d 226, 229, where the same phrase was under consideration, it is not necessary for us to decide whether the phrase was employed in the literal or figurative sense. The substance of the second of plaintiffs' two points, that the trial court abused its discretion in vacating the judgment and decree of its own motion, is directed to the court's action rather than the reason the court assigned, and we will therefore confine our consideration to the contention made by plaintiffs.

Civil Rule 75.01, V.A.M.R., provides, in part, that, "The trial court retains control over judgments during the 30 day period after entry of judgment and may vacate, reopen, correct, amend or modify its judgment for good cause within that time." That rule has its roots in the common-law principle that a judgment remained in the breast of the court during the term in which it was rendered and might be vacated by the court of its own motion. Ashby v. Glasgow, 7 Mo. 320; Hill v. St. Louis, 20 Mo. 584; Woodward v. Woodward, 84 Mo. App. 328. With the adoption of the 1943 Civil Code of Missouri, Laws of Missouri 1943, p. 353, the period during which the trial court has the power to set aside a judgment of its own initiative and order a new trial was limited by Section 119 of that Code to 30 days. Subsequently that section appears as Section 510.370, which according to the 1959 note of the committee on rules formed the basis of our present Civil Rule 75.01.

The pertinent portion of that rule, which has been quoted, empowers the court which entered the judgment to vacate the same of its own initiative within 30 days for "good cause." Regarding that phrase as used in Civil Rule 75.01, it was said in Vaughn v. Ripley, 416 S.W.2d 226, 228, that " * * * The term 'good cause', as used in this connection, is not susceptible of precise definition, but it was obviously

coined to serve a remedial purpose in a matter addressed primarily to the conscience of the court and it should therefore be interpreted with commensurate liberality, not only to prevent a manifest injustice but to avoid a threatened one, especially in cases tried without a jury where evidence on one side only is presented. Long v. Stilwell Homes, Inc., Mo.App., 333 S.W.2d 103, 106. * * * " And in Kollmeyer v. Willis, Mo.App., 408 S.W.2d 370, 381, the court held that, " * * * the trial court has, during the period of thirty days after entry of judgment, the same inherent power to vacate a judgment 'for good cause' as, under prior practice, it did during the judgment term. * * * " In many of the cases involving the prior practice there is quoted the statement of our Supreme Court, made in Scott v. Smith, 133 Mo. 618, 34 S.W. 864, 865, that "In the absence of statutory limitation, a trial court possessing general jurisdiction, and proceeding according to the course of the common law, has control of its judgments, of the character of this one, during the term at which they are rendered, and power to vacate them in its discretion. * * * " And as was said in Kollmeyer v. Willis, supra, 408 S.W.2d 381, "In the final analysis, the primary purpose and broad objective of all litigation are, simply and succinctly stated, to do justice. Levee Dist. No. 4 of Dunklin County, supra, 281 S.W.2d 614 at 618, and cases there cited. To that end, many judgments have been set aside by trial courts in the exercise of their inherent power so to do, while the judgment remains in the breast of the court, 'in the interest of justice' [Ewart v. Peniston, 233 Mo. 695, 136 S.W. 422, 425(4); Cherry v. Cherry, 225 Mo.App. 998, 35 S.W.2d 659, 660(3)] or 'as justice demands' [Dietrich v. Dietrich, Mo. App., 28 S.W.2d 418, 419(2); Faulkner v. F. Bierman & Sons Metal & Rubber Co., Mo.App., 294 S.W. 1019, 1020(2)—see Aull v. St. Louis Trust Co., 149 Mo. 1, 50 S.W. 289, 292] or 'as justice requires' [Reid v. Moulton, Mo., 210 S.W. 34, 36(5); Ekonomou v. Greek Orthodox Church St. Nicholas, Mo.App., 280 S.W. 57, 58—see Wooten

v. Friedberg, 255 Mo. 756, 198 S.W.2d 1, 5 (1)] or *'when that is necessary to prevent injustice.'* People's Bank of Holcomb v. Bullock, 216 Mo.App. 492, 270 S.W. 119, 120(2)."

In some of the cases similar to the instant case it is said that the inherent right of the court to vacate a judgment is subject to the limitation that a judgment may not be set aside arbitrarily or capriciously, Blackwell-Wielandy Book & Stationery Co. v. John L. Boland Book & Stationery Co., Mo.App., 226 S.W. 274, and to the further limitation that the party to be affected adversely must be given reasonable notice and an opportunity to be heard. Albert J. Hoppe, Inc. v. St. Louis Public Service Co., Mo., 235 S.W.2d 347; Savings Trust Co. of St. Louis v. Skain, 345 Mo. 46, 131 S.W.2d 566. The first of those two limitations, however, would seem to be largely theoretical. For as far as our research has disclosed (and no case to the contrary has been cited by plaintiffs) we have found no decision in which an appellate court has held that a trial court acted arbitrarily or capriciously, or abused its discretion, in setting aside a judgment rendered against a defendant who had answered but had failed to appear when the cause was called for trial. The rationale for the policy of the appellate courts to sustain the action of the trial courts in cases of this nature is to be found in the statement, frequently made, that for two reasons an appellate court is less likely to interfere when the trial court has set aside a judgment rendered on the nonappearance for trial of the defendant. First, because when the judgment is set aside the case is reopened and justice will yet be done on the merits, Scott v. Smith, 133 Mo. 618, 34 S.W. 864; Long v. Stilwell Homes, Inc., Mo.App., 333 S.W.2d 103; and second, because such action is in keeping with and in furtherance of the policy of the law to try and determine cases on their merits when that will not result in harmful delay, Crown Drug Co. v. Raymond, Mo.App., 51 S.W.2d 215;

Karst v. Chicago Fraternal Life Ass'n, Mo.App., 22 S.W.2d 178.

 In determining whether in the instant case the trial court abused its judicial discretion we must take into consideration the several reasons which motivated its action. The court undoubtedly had in mind the amendment by interlineation of the plaintiffs' amended petition which plaintiffs were permitted to make on the day of trial, without notice to defendants. Where, as here, issue has been joined, a party "may amend his pleading only by leave of court or by written consent of the adverse party; * * *." Civil Rule 55.53. And while that rule provides that " * * * leave shall be freely given when justice so requires * * *", justice also requires that even a party in default is entitled to notice of the fact when a substantial and material amendment of a petition is permitted. Thus in Rubbelke v. Aebli, Mo., 340 S.W.2d 747, 752, on the date the case was set for trial and the defendant failed to appear, the plaintiffs were permitted to make a substantial and material amendment of their petition. The defendants' motion to vacate the judgment was overruled, and the Supreme Court, in reversing the judgment and granting defendant a new trial for lack of notice to defendant of the amendment said, " * * * If there is a substantial and material amendment, even a party in default is entitled to notice of the fact 'in the furtherance of justice.' * * *" There can be no doubt that at least one of the amendments to their petition which plaintiffs were permitted to make in the instant case after the trial had started was a substantial and material amendment. For without the allegation that defendants "have no right or interest in" the timber, trees, topsoil and foliage destroyed or carried away plaintiffs' petition did not state a claim for treble damages under the statute, and plaintiffs would not have been entitled to a judgment for such damages. Section 537.340; Hewitt v. Harvey, 46 Mo. 368; Mishler Lumber Co. v. Craig, 112 Mo.App. 454, 87 S.W. 41; O'Bannon v. St. Louis & G. Ry.

Co., 111 Mo.App. 202, 85 S.W. 603; O'Bannon v. St. Louis & G. Ry. Co., 106 Mo.App. 316, 80 S.W. 321; Pitt v. Daniel, 82 Mo. App. 168.

In addition to that ground, which in itself was legally sufficient to justify the setting aside of the judgment and decree, Rubbelke v. Aebli, supra, the trial court may also have had in mind that the plaintiffs' evidence failed to make a submissible case against defendant Fred Weber, Contractor, Inc.; that both defendants had a meritorious defense to the plaintiffs' claims, particularly as to their claims for punitive damages, which are inflicted by way of punishment for a malicious act, Sunset Acres Motel, Inc. v. Jacobs, Mo., 336 S. W.2d 473, 483, and may be assessed against two or more defendants in varying amounts, depending upon differing degrees of culpability, State ex rel. Hall v. Cook, Mo., 400 S.W.2d 39; that the nature and extent of the injunctive relief granted by the decree would have serious and costly consequences as to defendant Vigus Quarries; and that the failure of defense counsel to appear at the setting was not intentional, for as the trial court noted it would have been bound to continue the cause had defendants' attorney filed an affidavit in accordance with Civil Rule 65.06.

In view of the legal principles which we have noted and the situation presented in the record before us we are of the opinion that upon this appellate review we may not properly declare that the trial court abused its discretion in vacating the judgment and decree of its own motion and granting defendants a new trial.

Accordingly, the judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.