Robert J. MURRAY and Barbara S. Murray, Respondents,

v.

John J. SANDERS and Donna M. Sanders, Appellants.

No. WD 34381.

Missouri Court of Appeals, Western District.

Jan. 10, 1984.

As Modified March 21, 1984.

John R. Mencl, Independence, for appellants.

Tom B. Kretsinger, Jr., Liberty, for respondents.

Before MANFORD, P.J., and CLARK and KENNEDY, JJ.

KENNEDY, Judge.

Plaintiffs in a court-tried case in which defendants did not appear, received judgment for $8,500 actual damages and $5,000 punitive damages for defendants' alleged fraudulent misrepresentation. The alleged fraudulent misrepresentation was in con-

nection with the sale of a house by defendants to plaintiffs; defendants had allegedly told plaintiffs there had been no water problems with the house, when it had in fact been flooded. The judgment was entered by the court upon testimony of plaintiffs Mr. and Mrs. Murray on November 8, 1982. The defendants were not present in person or by attorney, although the case had been specially set for trial on November 8 by order dated August 9, 1982.

Defendants Mr. and Mrs. Sanders on November 24 filed a motion to set aside the judgment, alleging that they did not know the case had been set for trial and that they had a meritorious defense to the plaintiff's claim. Upon an evidentiary hearing the trial court refused to set the judgment aside, and an appeal from the judgment was thereupon taken to this court.

The judgment is reversed and the case remanded for a new trial.

Until the trial date approached, defendants had been represented by Mr. Stephen Crain, but Mr. Crain had withdrawn as their attorney. His motion for permission to withdraw had been filed on October 25, 1982. The court entered an order allowing the withdrawal on October 28. Apparently Mr. Crain wrote to the Sanderses by letter dated November 1, notifying them of his withdrawal. Exactly when that letter was received by the Sanderses and exactly what it said, we have no way of knowing. The letter was before the trial court as an exhibit, but it has not been filed here. We gather from Mr. Crain's testimony on the motion to set aside the default judgment that his November 1 letter informed the Sanderses of his withdrawal and also had warned them that Mr. Kretsinger and Mr. Caruso, who had succeeded the attorney who had filed the case for the plaintiffs, would very likely pursue the case in a purposeful and energetic way. It did not inform the Sanderses that their case was set for trial on November 8.

On November 8, the plaintiffs, Mr. and Mrs. Murray, showed up for trial with their attorney, Mr. Kretsinger. The defendants, as earlier noted, were not present in person or by attorney. The Murrays waived a jury trial and proceeded to present their evidence. Their evidence consisted of their own testimony. Their evidence of damages was a written appraisal by Silvius Appraisal that the house as represented would have been worth $53,500, but that the house with the history of flooding was worth $45,000. The trial court added $5,000 punitive damages.

Thereafter, the court clerk mailed a statement for costs to the Sanderses. Mr. Sanders on receipt of this statement called Mr. Crain, who checked the court files and learned that a judgment had been taken against the Sanderses. He wrote a letter to the Sanderses, dated November 18, informing them of that fact.

The Sanderses then employed another attorney, who on November 24, 1982, filed a motion to set the judgment aside. Evidence was heard on said motion on December 1 and the court overruled the same.

Several considerations lead us to reverse the judgment and remand the same for trial.

### I

■ While setting aside a default judgment (as we shall call it, but see *Weber v. Hoesch*, 603 S.W.2d 60, 61 (Mo.App.1980); *Williams Energy Co. v. Tracy Truck Leasing*, 562 S.W.2d 765, 767 (Mo.App.1978); *National City Bank v. Pattiz*, 26 S.W.2d 815, 816 (Mo.App.1930)) is a matter left to the discretion of the trial court and the trial court's ruling is to be interfered with by the appellate court only for abuse of discretion, still the discretion *not* to set aside is a good deal narrower than the discretion *to* set aside. Appellate courts are more likely to interfere when the trial court has denied the motion to set aside than when it has granted the same. *Schoenhoff v. Owens*, 564 S.W.2d 273, 275 (Mo.App.1978); *Whitledge v. Anderson Air Activities*, 276 S.W.2d 114, 116 (Mo.1955); *Anspach v. Jansen*, 229 Mo.App. 321, 78 S.W.2d 137, 138 (1935). The reason for this is our system's zeal for the trial of any cause on

its merits and its distaste for a default judgment.

The philosophy which guides our consideration of relief from default judgments has scarcely been more cogently articulated than by Judge Cottey, writing for this court in *Vaughn v. Ripley*, 416 S.W.2d 226, 228 (Mo.App.1967):

Counsel for both sides seem to be under the impression that the decision on this appeal will turn on the question of who was right and who was wrong in the affair that culminated in the judgment below. But an approach by that path is more apt to lead us around the problem than to it. The question before us is whether the trial court abused its discretion by setting aside the judgment and ordering a new trial. By the very terms of the rule under which that action was taken, its propriety must be judged by whether it was taken "for good cause." The rule was not designed to censure wrong, but to right it. The private quarrel of the lawyers is therefore a distraction, not an aid, to the inquiry. Error implies fault. "Good cause" for remedying it begins with that premise and concerns itself only with whether the fault should be excused or extenuated in the interests of justice. The term "good cause", as used in this connection is not susceptible of precise definition, but it was obviously coined to serve a remedial purpose in a matter addressed primarily to the conscience of the court and it should therefore be interpreted with commensurate liberality, not only to prevent a manifest injustice but to avoid a threatened one, especially in cases tried without a jury where evidence on one side only is presented. (Citations omitted). When a judgment has been set aside in conformity with that principle, the result ought not be overturned except for most cogent reasons directly affecting the administration of justice, for if the order be only doubtfully in error, the error is a transient one "and justice will yet be done on the merits." (Citations omitted). This is not to condone conduct intentionally designed or irres-ponsibly calculated to impede the work of the courts, but only to say that where a reasonable doubt exists, it should be resolved in favor of good faith.

■ In order to secure relief from a default judgment, the defaulting party must show a meritorious defense, reasonable diligence or excuse for default or non-appearance, and that no substantial injury to the plaintiff will result from a delay. *Schoenhoff v. Owens*, supra at 275.

We are unable to agree with respondents that the Sanderses were guilty of such a lack of diligence as to deprive them of their opportunity to present any defense upon the merits. While it can scarcely be said that the Sanderses moved with alacrity to get a new attorney after Mr. Crain's withdrawal, still there was nothing to indicate to them that there was any urgency about it. The earliest time they could have learned that Mr. Crain planned to withdraw as their attorney was October 23rd. Mr. Crain had on October 22 mailed to them a copy of his "motion to withdraw as attorney of record" in which he asked the court for its order "allowing him to withdraw as said attorney". That motion was heard and granted on October 28. On November 1 Mr. Crain wrote the Sanderses a letter and informed them of the granting of the motion.

It must be borne in mind that the Sanderses did not know the case was set for trial on November 8. They testified on the motion to set aside the judgment that they had not been informed of the trial date. Mr. Crain had no recollection of having advised them of the trial date. There was no evidence in his file that he had so notified them. Indeed the November 1 letter in which he advised them of his withdrawal as their attorney, did not mention the imminent trial date. Mr. Crain in his testimony described the November 1 letter as "noting the withdrawal again with a warning of you (Mr. Kretsinger, who was interrogating Mr. Crain) and Caruso in it". Undoubtedly the Sanderses would have assumed from this letter that the case was not set

for trial on a certain date. Furthermore, the desultory progress of the case would have lulled the Sanderses into a sense of repose. The case had been filed February 26, 1980. Attorney Crain (by agreement with Murrays' attorney) had filed Sanderses' answer on January 5, 1981. On August 12, 1981 plaintiffs filed interrogatories directed to defendants. The defendants' answers were filed September 17. (There seems to have been no other discovery on either side.) During this period of time the Murrays had been represented by an attorney who was in failing health. Exactly when Mr. Kretsinger and Mr. Caruso took up the representation of the Murrays is not clear, but it was before Mr. Crain's withdrawal from the case. Crain's notice of his motion of withdrawal had been mailed to Mr. Kretsinger.

 It is true that Mr. Crain's knowledge of the trial date is to be attributed to the Sanderses. Still when Mr. Crain withdrew from the case without informing his clients of the imminent trial date, the rule of attribution is not to be mechanically applied. The situation of the Sanderses after such withdrawal is similar to that of the clients of an attorney who has abandoned their cause without notice to the clients, in which case the clients are not denied relief from a default. *Schoenhoff v. Owens*, supra at 275; *Whitledge v. Anderson Air Activities*, supra at 116.

## II

 As to the requirement that they show preliminarily a meritorious defense, the Sanderses have filed an answer denying the allegations of fraudulent misrepresentation. They denied such allegations in the hearing of the motion to set aside. Respondents say that the Sanderses' answer and their testimony was too general and conclusory to satisfy the requirement of a showing of a meritorious defense. It would indeed have been more satisfying and more persuasive if it had been more detailed, but that lack of detail has not prevented relief against a default judgment. See *Schoenhoff v. Owens*, *supra* at 275; *Whitledge v. Anderson*, supra at 216–217 (Mo.App.1974). The Sanderses claim to have a good defense and it was at all times their serious purpose to resist the claim of the Murrays. On that point there is no dispute in the evidence.

Respondents cite three cases in which the overruling of motions to set aside default judgments were sustained on appeal. All of the cases are distinguishable. We take them up in order:

*Barker v. Friendly American, Inc.*, 606 S.W.2d 457 (Mo.App.1980). This was an independent equity proceeding to set aside the judgment alleged to have been procured by fraud. Different principles apply in the present case, which is a motion in the original proceeding, addressed to the court's Rule 75.01 power to vacate the judgment.

*Davis v. Moore*, 610 S.W.2d 665 (Mo.App. 1980). In this case the defendant whose attorney had withdrawn was personally notified of his cases being set for trial. On his failure to appear the first time, it was reset and defendant was once again notified. Only then was the judgment taken, which the court declined to set aside. In our case, the defendants never received any notice that their case was set for trial, although the plaintiffs could scarcely have failed to be aware that defendants were without counsel.

*Weber v. Hoesch*, 603 S.W.2d 60 (Mo. App.1980). Here there was no evidence that defendant's counsel had withdrawn, there was no explanation for the failure of the defendants to appear for trial, nor was there any showing of a meritorious defense. On all three counts the present case is distinguishable from *Weber*.

## III

Plaintiffs do not suggest that they would suffer any prejudice from delay occasioned by setting aside the judgment, so we do not need to address that point.

## IV

 One other point should be noticed. The motion to set aside the judgment was

filed on the 16th day after the judgment—out of time if the motion were treated as a new trial motion. Supreme Court Rule 78.-04. It was not a new trial motion, however, and did not come within the rule relating to motions for a new trial. See *Vaughn v. Ripley*, 446 S.W.2d 475, 478–479 (Mo.App.1969). It was instead a suggestion that the court exercise its Rule 75.01 power to set aside the judgment within 30 days of its rendition. *Vaughn v. Ripley*, supra at 478. See also *Vaughn v. Ripley*, 416 S.W.2d at 228–9. The respondent suggests that the trial court's discretion to set aside the judgment may be broader upon a motion to set aside filed within 15 days, and more limited when acting on its own motion or in response to a motion filed after the 15-day period. Respondent cites no cases to this effect and we do not think it is a plausible rule.

Judgment reversed and cause remanded for new trial.

All concur.