Justin GIBSON, by his next friend, Public Administrator Vivian WOODALL, Rita Swalley and Randy Gibson, Joshua Gibson, by his next friend, Public Administrator Vivian Woodall, Rita Swalley and Randy Gibson, Curtis Gibson, Jr., by his next friend Public Administrator Vivian Woodall, Plaintiffs–Respondents,

and

Rita Swalley and Randy
Gibson, Plaintiffs,

v.

David ELLEY, Defendant,

and

Union Pacific Railroad Company,
Defendant–Appellant.

Nos. WD 41520–41522.

Missouri Court of Appeals,
Western District.

Oct. 24, 1989.

Watson, Ess, Marshall & Enggas, James Duncan, Daniel Fowler, Thomas Cunningham, Kansas City, and Fitzgerald, Fitzgerald & Carter, Charles B. Fitzgerald, Warrensburg, for defendant-appellant.

Steven A. Fritz, Sedalia, Gregory R. Harrison, Liberty, and Robert B. Reeser, Jr., Sedalia, for plaintiffs-respondents.

Before CLARK, P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

Appeal from entry of default judgment against appellant, Union Pacific Railroad Company. The underlying actions are suits to recover damages that respondents allegedly incurred as a result of personal injuries sustained by the minor respondents in a collision between the motor vehicle in which they were riding and a train. Appellant presents a single point claiming that the trial court erred in not setting aside the default judgments as all the requirements for setting them aside were satisfied in that appellant stated facts constituting a meritorious defense and presented evidence that its failure to timely file was the result of a good faith mistake that was neither intentionally or recklessly designed to impede the judicial process.

The default judgment in the instant case arose out of injuries suffered by Joshua Gibson born December 15, 1978, Justin Gibson, born April 16, 1980, and Curtis Gibson, Jr., born June 2, 1981. The action includes the claims of Rita Swalley and Randy Gibson, the natural parents of the minor plaintiffs.

On June 11, 1988, at approximately 5:45 p.m., a passenger train owned and operated by the National Railroad Passenger Corporation (Amtrak) was traveling east from Kansas City to St. Louis, Missouri, on the Union Pacific–Sedalia subdivision tracks. The train was approaching the public grade crossing at Pettis County Route W in Smithton, Missouri, traveling approximately seventy miles per hour. The railroad tracks at the crossing run in a generally east/west direction. There are crossing gates and flashing crossing lights on the corners of the crossing.

According to affidavits in the record, David Grimoldi, the engineer operating the train, sounded the locomotive's horn and bell as the train approached the crossing. The locomotive's headlights and oscillating strobe light were also operating at that time. The crossbars at the crossing were in a down position. The crossbars had been down for almost fifteen hours prior to the occurrence because of a malfunction.

The train collided with a van operated by David Elley. Rita Swalley and her three children were passengers in the van. Swalley testified at the default hearing that Elley stopped at the crossing and that he looked to the west before driving around the crossing gates. Other testimony on the hearing on the motion to set aside suggested that Elley was drunk at the time of the accident and that he never stopped the van at the gates but simply drove around them. Joshua, Jason and Curtis all sustained multiple injuries as a result of the collision.

On October 12, 1988, separate petitions were filed in the Circuit Court of Pettis County in regard to the injuries suffered by the three children. Counts I through III of each petition were claims by the minor plaintiffs through their next friend, the public administrator, for damages allegedly caused by Elley, Union Pacific and Amtrak. Count IV of each petition was a claim by Swalley and Randy Gibson, the children's parents, to recover for loss of society and medical expenses. Defendant Elley was served on October 17, 1988. Defendant Union Pacific was served on October 18, 1988, by personal service on its registered agent. No responsive pleadings were filed by either Elley or Union Pacific. On October 19, 1988, Keith Borman, Gener-

al Solicitor for Union Pacific received three "Service of Process Transmittal Form[s]." He advised Michael E. Murray, Senior Legal Assistant for Union Pacific, to tell Amtrak about the lawsuits. Amtrak, pursuant to an agreement with Union Pacific, is responsible for defending and indemnifying Union Pacific in all civil actions brought against Union Pacific involving grade crossing collisions where Amtrack trains are involved.

On October 24, 1988, Murray telephoned Marvin Smith, Director–Litigation for Amtrak and advised him of the suits. Smith agreed to accept Union Pacific's tender of defense. On October 28, 1988, Murray sent Smith a certified letter confirming the phone conversation and enclosing the "Service of Process Transmittal Form[s]," the summons and the petitions.

Murray's letter and the enclosures were received in the Amtrak Law/Claims Department on November 10, 1988. Smith, however, did not actually see the documents until December 2, 1988. During the week of November 7, 1988, the week that Murray's letter arrived, all of the personnel of the Law/Claims Department were attending a meeting in Lancaster, Pennsylvania. The office was staffed solely by temporary secretaries that week. Thus, the usual procedure involved in processing an average of fifty to sixty complaints received per month, went by the wayside. When the documents sent by Murray were finally found, they were in a stack of miscellaneous papers, none of which were in any way related to the lawsuits.

A hearing to enter default judgments in the three cases was held on November 23, 1988. Prior to the hearing Amtrak was dismissed from the case. Only two witnesses testified at the hearing: Mary E. McIntire, M.D., who presented testimony based solely on a review of the medical records of Justin, Joshua and Curtis; and Rita Swalley. At the conclusion of the hearing judgment was entered against Un-

ion Pacific and defendant Elley in each of the cases.

When Smith discovered the documents on December 2, 1988, he engaged legal counsel. It was discovered that default judgments had been taken in the cases on November 23, 1988. Subsequently, on December 15, 1988, Union Pacific filed a motion to set aside the default judgments and for leave to file an answer, counter-claim and cross-claim in each case. Supporting affidavits were also filed at this time. After a hearing on the motion, the circuit court overruled it, refusing to set these judgments aside. This appeal followed.

Essentially the question presented by this appeal is whether the trial court abused its discretion by its refusal to set aside the default judgment. The answer to this question is provided by new Rule 74.-05(c) [1] which states:

> (c) **When Set Aside.** Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. An order setting aside an interlocutory order of default or a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a result of the default by the party who requested the default.

The setting aside of a default judgment has traditionally been at the discretion of the trial court, whose ruling will not be interfered with unless an abuse of that discretion is found. *Krueger v. Perez*, 764 S.W.2d 173, 174 (Mo.App.1989). It is notable, however, that "the discretion not to set aside is a good deal narrower than the

---

1. The adoption of new Rule 74.05(c) makes a change from the old rules, streamlining them and indicating a more liberal posture as to the setting aside of default judgments. Former

Rule 74 was much more complicated and complex than the present Rule. It was repealed and the new Rule adopted in 1987 with an effective date of January 1, 1988.

discretion to set aside." *First Missouri Bank of St. Francois County v. Patterson*, 696 S.W.2d 800, 801 (Mo.App.1985). Thus, an appellate court is much more likely to interfere with the trial court's decision when the motion to set aside the judgment has been denied. *Id.* The reason given for such a directive is the distaste our system holds for default judgments. *Murray v. Sanders*, 667 S.W.2d 426, 428 (Mo.App. 1984). This distaste is mirrored by the new structure of Rule 74.05(c).

Historically, the discretion of the trial judge has not been held to be unbridled. Rather, the discretion of the trial judge must be tempered always by considerations of justice and of fair play. For example, in *Whitledge v. Anderson Air Activities, Inc.*, 276 S.W.2d 114, 116 (Mo.1955), the court states that, "[t]he general rule is that, where the application or motion to set aside discloses a meritorious defense, and reasonable diligence or excuse for default is shown, and no substantial injury to plaintiff will result from delay, a trial court *should* exercise its discretion in favor of a trial on the merits." (Emphasis added.)[2]

Turning then to the requirements of Rule 74.05(c), an examination of whether or not the trial court abused its discretion is based upon whether: (1) facts constituting a meritorious defense were shown; and (2) whether good cause was shown, i.e., "a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process," Rule 74.05(c), ever mindful of the fact that the rule uses the word "may" and that word brings the concepts of judicial discretion and its abuse into play.

Turning then to the requirements of the rule, the question becomes whether or not Union Pacific made a showing of good cause for its failure to answer plaintiffs' petitions. It is clear from the record that Union Pacific made a showing of good cause. Certainly it cannot be said that Union Pacific intentionally meant to default, to impede the judicial process. The affidavits before the trial judge reveal no intent on the part of appellant in its failure to answer. The series of mishaps in the instant case is inconsistent with the intentional behavior required by the Rule.

Nor can it be said that appellant's conduct was reckless within the meaning of the Rule. The term "reckless" has been used in many contexts. The dictionary definition of "reckless" is, "lacking in caution: deliberately courting danger." *Webster's Third New International Dictionary*, 1896 (1971). Appellant cites *Farm Bureau Town & Country Ins. Co. v. Turnbo*, 740 S.W.2d 232 (Mo.App.1987), in which a dispute over the terms of a liability insurance contract was in issue. In this context, the concept of recklessness was discussed as follows:

Recklessness differs from negligence also in kind. A person is negligent, if his inadvertence, incompetence, unskillfulness or failure to take precautions precludes him from adequately coping with a possible or probable future emergency. Restatement, § 500, Comment g. To be reckless, a person makes a conscious choice of his course of action, "either with knowledge of the serious danger to others involved in it or with knowledge of the facts which would disclose the danger to any reasonable man." *Id.* Recklessness also differs from that negligence which consists of intentionally doing an act with knowledge it contains a risk of harm to others. To be reckless, a person must "recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. [The difference between reckless conduct and negligent conduct is a difference in degree of risk], but this difference of degree is so marked as to amount substantially to a difference in kind." *Id.*

*Farm Bureau Town & County Ins. Co. v. Turnbo, supra,* 740 S.W.2d at 235 (quoting Restatement (Second) of Torts (1965)).

These definitions all deal with some element of deliberateness and of risk. While

---

2. Rule 74.05(c) makes no reference to the "no substantial injury to plaintiff" language found in *Whitledge v. Anderson Air Activities, supra,* thus eliminating the need for such a showing as a condition precedent to the trial court's timely setting aside of a default judgment.

it might be said that the chain of errors occurring here and leading to the default were not in accord with sound business practice, they simply are not reckless in the way contemplated by the Rule. It is also important to note that Rule 74.05(c) omits the term "negligence" from its requirements.

In the instant case Smith's actions upon discovering the documents in the miscellaneous pile are inconsistent with reckless behavior on his part. He immediately arranged for legal counsel, before he even knew of the default that had been taken. Smith should be given the benefit of the doubt. In *Vaughn v. Ripley*, 416 S.W.2d 226 (Mo.App.1967), the court addressed the concept of "good cause" in the overturning of a default judgment under Rule 75.01 stating that, "[t]he rule was not designed to censure wrong, but to right it." *Id.* at 228. This is still a good observation today and fits perfectly with the spirit of Rule 74.05(c). The court in *Vaughn* points to that; it does not condone conduct which is "intentionally designed or irresponsibly calculated to impede the work of the courts," but concludes that, "where a reasonable doubt exists it should be resolved in favor of good faith." *Id.* at 229. Given the peculiar circumstances of the instant case it is evident that good cause did exist to set aside the default judgment.

In addition to the requirement of good cause mandated by Rule 74.05(c), the Rule also imposes a requirement upon the moving party to state facts which would constitute a meritorious defense to the plaintiffs' claims. This does not mean, however, that such a defense must be conclusively proven. It is enough that some showing be made of the existence of at least an arguable theory from which a defense may be made. *Boyer v. Church*, 573 S.W.2d 444, 447 (Mo.App.1978). Union Pacific has met this standard.

To prevail on a claim in a negligence action, plaintiff must establish a "(1) legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property." *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985). Appellant contends that the negligent conduct of defendant Elley, or the combined negligence of defendant Elley and plaintiff Swalley, was the proximate cause of the collision and that even if Union Pacific was negligent, that negligence was not the proximate cause of the collision. Respondent argues at length as to the negligence of Union Pacific given the circumstances that existed at the time of the collision. It is not for this court to decide whether or not Union Pacific should prevail upon its defense, but rather if a meritorious defense existed to respondents' charges. Given the circumstances of the instant case a trier of fact *could* find that the actions of Union Pacific were not the cause of the plaintiffs' injuries. Whether or not a jury *would* so find is not a proper determination for this court.

Union Pacific presented affidavits in support of its motion to set aside the default judgment and these affidavits were admitted into evidence. Although the crossing gates had been down for some time, there was evidence presented in the affidavits that the train's horn was blowing as it approached the crossing. The horn was audible to witnesses located in an automobile on the north side of the crossing even with the car windows rolled up and the air conditioner operating. There is evidence presented in the affidavits that Elley was intoxicated and did not bother to even stop at the crossing.

Given the evidence presented in the instant case a meritorious defense was stated. Thus, Union Pacific satisfies the requirements of Rule 74.05(c) and because such a showing was made upon the peculiar facts and circumstances presented here, the trial judge's refusal to set aside the default was an abuse of his discretion.

Accordingly, the trial court's order is reversed and the case is remanded with directions to set aside the default judgments against Union Pacific.

All concur.