Amy **FULLER**, Respondent,

v.

Tamela L. **ROSS**, Appellant.

No. WD 59792.

Missouri Court of Appeals, Western District.

Dec. 11, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2002.

Application for Transfer Denied March 19, 2002.

Lesley A. Renfro Wilson, Kansas City, for appellant.

Gerald L. Thompson, Kansas City, for respondent.

Before LOWENSTEIN, P.J., ELLIS and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

Tamela L. Ross appeals the denial of her motion to set aside a default judgment. Ross contends the trial court erred in denying her motion because she established good cause for failing to respond to the summons and a meritorious defense to the underlying lawsuit; and because the default judgment was void for improper service of process. We affirm the trial court's judgment.

### Factual Background

Amy Fuller filed a Petition for Damages on July 23, 1999, against Tamela L. Ross for property damage and personal injury allegedly sustained as the result of a traffic accident involving both women on February 27, 1998. The deputy sheriff's return of personal service on the summons issued by the Jackson County Circuit Court attested to service on "Tamelal [sic] Ross" on August 11, 1999, at 7335 Highland, Kansas City, Missouri. Although Ross was aware of the summons, she failed to answer the petition and did not enter an

appearance. A default judgment was entered against her on January 28, 2000, in the amount of $16,555.00.

On June 16, 2000, Ross filed her motions for relief from judgment. The court granted Ross an evidentiary hearing, held on August 16, 2000. Ross testified that around the time of the accident in February 1998, she was in the process of moving to her brother's house, but continued to live at 7335 Highland with her mother part of the time. On August 11,.1999, the date indicated on the return of service, Ross testified she was living full time with her brother at 4237 E. 54th Street, Kansas City, Missouri, and she used that address for job and employment applications and received her mail at that address. Ross' mother testified that on August 11, 1999, Ross did not live at the 7335 Highland address, but lived with her brother at 4237 E. 54th Street. The testimony of Ross and her mother varied as to when Ross actually moved out of the 7335 Highland address. Ross' mother testified Ross had moved out three to four years earlier, yet Ross testified she lived with her mother part of the time on the date of the accident only a year and a half earlier, and Ross still used her mother's address on her driver's license and gave that address to police for the accident report.

According to Gena Dodds, a friend of Ross, the summons was served not upon Ross, but was served on Dodds. Dodds was at Ross' mother's house on the date of service, babysitting Ross' son. Dodds testified she was not living at the 7335 Highland address and she is not a member of Ross' family. Dodds testified she was at the 7335 Highland address on August 11, 1999, when someone came to the house with papers for Ross. She said no one else was at the residence when the papers were given to Dodds.

At the hearing, Ross testified she had never been involved in a lawsuit before this one; she was only eighteen years old at the time the summons was served; she eventually got the summons and petition that had been served on Gena Dodds; she believed the documents were from her mother's insurance carrier; she called Fuller's attorney's number (which she found on the summons) but was unable to reach him and left a message, which was never returned; she did not understand that a lawsuit had been filed against her and did not understand that she had to file an answer; she did not understand what a default judgment was; it was not her intent to prevent Fuller from using the judicial process to pursue a claim against her; and finally, that she believed her mother had contacted her insurance carrier regarding the documents she received. With regard to the automobile accident itself, Ross testified Fuller made a left turn in front of her, and Ross, who attested to having a green light, was unable to avoid the accident. Ross also testified that, at the accident scene, Fuller stated she was not injured, and she was fine when Ross' mother called her after the accident.

Ross did not call the deputy sheriff who served the summons to testify at the evidentiary hearing. Ross' evidence wholly failed to directly attack the credibility of the deputy who served the summons and petition. The court denied Ross' motion for relief from a default judgment, or in the alternative, motion to set aside default judgment, as well as her motion for rehearing, or in the alternative, motion for reconsideration, stating at the close of the evidentiary hearing:

> THE COURT:.... So, here's my ruling. The burden is upon the defendant to present evidence that proper service was not had. No attempt has been made by defendant to attack the deputy who actually provided service. The ser-

vice process filed in this court is a—there's a certificate certifying that this process server not only served process properly but served it to a Tamela L. Ross, and there has been no attack on that process server, that the person he served was Ms. Ross. And that's a concern I have. All we have are a young woman who initially starts out by saying that she didn't live in that home at the time of the accident, that she lived there part time, although all records to the police indicate that that's her residence. I have a process server who has not yet been attacked at all, saying that service was had at 7335 Highland to a Ms. Ross. And, for those reasons the motion to set aside default judgment will be denied.

Ross appeals that denial, arguing, first, that she established good cause for failing to respond to the summons and a meritorious defense to the underlying lawsuit, and, second, that the default judgment was void for improper service of process.

### Standard of Review

■ Rule 74.05(d)[1] provides that a default judgment may be set aside "[u]pon motion stating facts constituting a meritorious defense and for good cause shown." "Good cause" is defined in Rule 74.05(d) as including "a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process." "Meritorious defense" has been described as facts indicating "an arguable theory from which a defense may be made." *Gibson by Woodall v. Elley,* 778 S.W.2d 851, 855 (Mo.App. W.D.1989). Although Rule 74.05 states that a judgment "may" be set aside if a meritorious defense and good cause are shown, the trial judge's discretion is not unbridled but is constrained by the parameters of reasonableness and construed in light of the purposes of the rule. *Id.* at

854. In reviewing an alleged abuse of discretion, we review the trial court's ruling to determine whether it was supported by substantial evidence, was against the weight of the evidence, or was the result of a misapplication of the law. *Boatmen's First Nat'l Bank v. Krider,* 844 S.W.2d 10, 11 (Mo.App. W.D.1992).

### Point I

■ Ross' first point on appeal attacks the trial court's denial of her motion on the basis that she showed *good cause* for failing to respond to the summons and a *meritorious defense* to Fuller's charges against her, as required by Rule 74.05(d). Ross contends the evidence presented at the hearing clearly showed that her conduct is to be excused under Rule 74.05 because it was a "mistake" or conduct "not intentionally or recklessly designed to impede the judicial process." Ross points out that she was eighteen years old on the date of the attempted service of process and had never previously been involved in the litigation process. Even though she eventually received the summons and petition approximately one week after the service date, Ross mistakenly believed they were documents sent by her mother's insurance carrier. She did not understand she was being sued for money damages as a result of the accident, did not understand she was required to file an answer in response to the summons and petition, and did not understand the meaning of a default judgment. Thus, Ross contends, she did not intentionally or recklessly ignore the summons and petition in an effort to impede the judicial process.

In response to Ross' contentions, Fuller asserts there was no credible or substantial evidence to establish either good cause or a meritorious defense. Fuller observes

---

1. All rule citations are to the Missouri Rules of Civil Procedure (2001).

that the court, in denying Ross' motions, stated [2] it rejected the testimony of Ross' witnesses at the evidentiary hearing. Fuller observes that determining the credibility of witnesses is a matter within the sound discretion of the trial court, and the most probative and credible evidence on the issue of service is the return of service from the court's file and the testimony of the process server. Thus, Fuller contends, Ross failed to meet her burden of establishing the existence of evidence of good cause or a meritorious defense, pursuant to Rule 74.05(d).

The truth about Ross' recklessness, according to Fuller, is revealed in Ross' statement: "I believe[d] my mother ... had called her insurer, State Farm, *about the lawsuit filed against me*" (emphasis added). Fuller asserts this statement shows Ross knew the papers involved a lawsuit that had been filed against her. Further, Fuller argues, Ross' assertions ·that she did not understand the nature of the proceeding and was not attempting to impede the process are unpersuasive in light of the clear language on the summons, which she acknowledged she received within a week of the date of service. The summons "clearly commands a response with the consequence of no response being a default judgment." Thus, Ross' contentions were not credible, Fuller concludes.

■ In *Robson v. Willers*, 784 S.W.2d 893 (Mo.App. W.D.1990), where a default judgment was upheld because the appellants failed to show good cause for failure to answer the summons, the court stated: "A movant must be free from negligence in order to have a reasonable excuse for allowing a default judgment to occur." *Rob-son*, 784 S.W.2d at 896. In *Robson*, the appellant asserted that his reason for failing to answer and appear was that he "paid no attention to the summons because he was busy, had family troubles and didn't understand the meaning of a default judgment." *Id.* His wife testified that she ignored her summons because she had not had anything to do with the funds in question and didn't understand the summons. *Id.* "Neither appellant presented any claim of defects in service of the suit papers nor did they profess a lack of knowledge as to the nature of respondent's claim against them. [T]hey simply decided to ignore the suit." *Id.*

The *Robson* court compared the facts in their case to those in *Harriman v. Household Finance Corp.*, 608 S.W.2d 117 (Mo. App. S.D.1980), where the summons and petition were delivered to movant's wife who then laid the papers aside and lost them. *Robson*, 784 S.W.2d at 896. Although the movant in *Harriman* became aware before judgment was entered that he had been sued and that an action was pending against him, he took no steps to obtain counsel or to ascertain the nature of the case. *Id.* Finding that those facts showed negligence and lack of good cause for permitting the default judgment to be entered, the *Harriman* court upheld the trial court's denial of the motion for relief from default judgment. *Id.* In affirming the trial court's denial in *Robson*, the court stated that the facts "parallel[led] those in *Harriman* and show[ed] that the default judgment was the product of appellants' own negligence and careless attitude toward the petition and summons." *Robson*, 784 S.W.2d at 896.

*Boatmen's First National Bank v. Krider*, is another instance where the court

---

**2.** The August 17, 2000, Order states: "After an evidentiary hearing held on August 16, 2000, the court rejects the testimony of defendant's witnesses, questioning their credibility. The court also notes that [sic] defendant's failure to produce the process server in this case."

upheld the denial of a motion for relief from default judgment. In *Boatmen's*, the appellant received a summons and petition showing Boatmen's was suing her for debts she attributed to her ex-husband. *Boatmen's*, 844 S.W.2d at 12. The appellant testified her ex-husband, her ex-husband's divorce attorney, and a friend who was a magistrate judge, told her the matter would be taken care of and she need not appear. *Id.* She also testified, however, that she was aware her ex-husband's indebtedness to the bank had not been repaid, despite his assurances that he would take care of the indebtedness. *Id.* The appellant also acknowledged the bank attempted to communicate with her prior to filing the suit, but she did not respond. *Id.* Based on this evidence, the *Boatmen's* court concluded there was no mistaken belief on her part as to whether the summons required her appearance, "[s]he simply decided to ignore the summons, a decision of neglect and inattention." *Id.*

Comparing the conduct of the appellant in *Boatmen's* to that of the appellants in *Robson*, the *Boatmen's* court found:

> There is substantial evidence that she knew the matter had not been taken care of, and was reckless in relying on assurances from persons other than the party who had brought the suit against her. The default was a direct result of negligence and her careless attitude toward the petition and summons. [Appellant's] reasons for not appearing do not constitute good cause. She simply ignored the summons and refused to appear. Her conduct was intentionally, or at least recklessly, designed to impede the judicial process. We find no abuse of discretion in the court's refusal to set aside the default judgment.

*Id.*

This case is like *Robson* and *Boatmen's* in that the trial court could reason-

ably have believed "the default judgment was the product of appellants' own negligence and careless attitude toward the petition and summons." *Robson*, 784 S.W.2d at 896. Moreover, the court questioned the credibility of Ross' witness and determined there was little to support her good cause argument. "In close cases, deference must be given to the determination of the trial judge as to whether conduct in a particular case is excusable as not being reckless or intentional." *Sears v. Dent Wizard Int'l Corp.*, 13 S.W.3d 661, 664 (Mo.App. E.D.2000)(quoting *Bell v. Bell*, 849 S.W.2d 194, 198 (Mo.App. W.D.1993)). The trial court had substantial evidence from which it could conclude that Ross recklessly ignored the summons and such a conclusion was not contrary to the weight of the evidence. Point I is denied.

## Point II

Ross contends the default judgment against her was void for improper service of process under Rule 54.13(b)(1). That rule states:

(b) **How and on Whom Made.** Personal service within the state shall be made as follows:

(1) On Individual. Upon an individual, including an infant or incompetent person not having a legally appointed guardian, by *delivering* a copy of the summons and petition *personally to the individual* or by *leaving* a copy of the summons and petition *at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of fifteen years,* or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process. [emphasis added]

Ross contends she presented clear and convincing evidence that she was not personally served with a copy of the summons and petition and that a copy of the summons and petition was not left at her "dwelling house or usual place of abode" with a person of her family, as required by the rule. She argues the evidence presented "clearly shows" she was not present at the 7335 Highland address at the time of the attempted service and was not personally served with the summons. Gena Dodds was given the summons and petition by the process server; Dodds did not reside at 7335 Highland and was not a member of Ross' family; and that Ross did not live at 7335 Highland on the date of service.

At the evidentiary hearing, Ross presented Gena Dodds' testimony that she received the summons and was not a member of Ross' family; Ross' mother's testimony that Ross did not live with her at the time; her own testimony that she was not personally served with the summons and the 7335 Highland address was not her dwelling house or usual place of abode on that date; and various exhibits attached to her motion for rehearing showing she had used the 4237 E. 54th Street address on numerous documents during that time period. All this evidence, Ross contends, shows she was not personally served with a copy of the summons, the residence where the summons was served was not her "dwelling house or usual place of abode," and that the summons was not left with a "person of [her] family."

Furthermore, Ross observes, Fuller presented no evidence at the hearing in opposition to or rebutting any of these contentions. Ross contends, finally, that the court erroneously based its decision in part on the evidence regarding Ross' place of residence on the *date of the accident,* which, she claims, is irrelevant to the issue of improper service of process.

In response, Fuller asserts the trial court was correct in denying Ross' motions for relief from the default judgment on the basis of improper service, because the credible evidence clearly showed Ross was properly served, because of Ross' failure to call the process server as a witness, and because the trial court acted within its sound discretion based on the credibility of the witnesses. The trial court, in its August 17, 2000 judgment, specifically declined to accept the credibility of Ross' witnesses on the matter of improper service of process. Ross had told the police she lived at the address where service of process was obtained, Ross admitted she received the summons and petition; moreover, Fuller points out, the process server was never called by Ross at the hearing so the validity and accuracy of the return of service was never effectively and credibly challenged by Ross.

Rule 54.22(a) states: "The return of service shall be considered prima facie evidence of the facts recited therein." Rule 54.22(b) states:

The party served, or the sheriff, sheriff's deputies and sureties or any other person making the service shall be permitted to show the true facts of service and impeach the return when the return does not comport with the facts as found by the court. If the court finds that the facts recited in the return are not true, the court may set aside a judgment if one has been entered or may modify the same in whole or in part as justice may require or take such further action it deems proper.

In *State ex rel. DFS v. Sutherland,* 916 S.W.2d 818 (Mo.App. W.D.1995), the court observed that a sheriff's return of service is considered "prima facie evidence of facts recited therein," and the return is

subject to impeachment by the party alleged to have been served "only by clear and convincing evidence." Rule 54.22(a); *Sutherland*, 916 S.W.2d at 820. Thus, the court concluded:

> Sutherland was obligated to provide clear and convincing evidence that his usual place of abode was not 7610 North 71 Highway. The only evidence that Mr. Sutherland presented to impeach the verity of the service was in-court testimony, which the trial court was entitled to disbelieve. .... Not only was there evidence from which the trial court could have disbelieved Mr. Sutherland's testimony but also, Mr. Sutherland failed to clearly and convincingly overcome the prima facia (sic) evidence of the facts recited in the return.

*Id.* at 820–21.

In the case at hand, the trial court explained its denial of the motions, stating:

> The burden is upon the defendant to present evidence that proper service was not had. No attempt has been made by defendant to attack the deputy who actually provided service. The service process filed in this court is a—there's a certificate certifying that this process server not only served process properly but served it to a Tamela L. Ross, and there has been no attack on that process server, that the person he served was Ms. Ross.... All we have are a young woman who initially starts out by saying that she didn't live in that home at the time of the accident, that she lived there part time, although all records to the police indicate that that's her residence. I have a process server who has not yet been attacked at all, saying that service was had at 7335 Highland to a Ms. Ross....

Ross failed to impeach the process server's return of service with clear and convincing evidence. Thus, the trial court did not abuse its discretion in denying the motions to set aside the default judgment. Point II is denied.

The judgment of the trial court is affirmed.

All concur.