[No. 9382–7–I.   Division One.   July 23, 1984.]

ELMER J. TURNGREN, ET AL, *Appellants,* v. KING COUNTY, ET AL, *Respondents.*

*Daniel Hoyt Smith* and *Michael Withey,* for appellants.

*Norm Maleng, Prosecuting Attorney, Michael Duggan* and *Patrick Schneider, Deputies,* and *Barry Johnson,* for respondents.

*Katrina Pflaumer* on behalf of the American Civil Liberties Union, amicus curiae.

ANDERSEN, J.—This is essentially a suit for damages against King County and the City of Redmond brought following a police search of the plaintiffs' house, pursuant to a search warrant, that did not turn up the evidence sought. In *Turngren v. King Cy.,* 33 Wn. App. 78, 649 P.2d 153 (1982) (*Turngren* I), after setting out the facts in some detail, we affirmed a summary judgment for the defendants granted by the trial court. The plaintiffs then petitioned the State Supreme Court for review.

Two of the cases cited in *Turngren* I were *Clipse v. Gillis,* 20 Wn. App. 691, 582 P.2d 555 (1978) and *Moloney v. Tribune Pub'g Co.,* 26 Wn. App. 357, 613 P.2d 1179, *review denied,* 94 Wn.2d 1014 (1980). Subsequent to our decision in *Turngren* I, the State Supreme Court decided *Bender v. Seattle,* 99 Wn.2d 582, 664 P.2d 492 (1983), a tort action brought against the City of Seattle by a person against whom a criminal action had been filed and then dismissed. *Bender* held, among other things, that "to the extent the Court of Appeals decisions in *Clipse* and *Moloney* purport to extend the limited doctrine of discretionary governmental immunity, we now expressly disapprove of those cases." *Bender,* at 590.

The State Supreme Court then remanded *Turngren* I to us for determination in light of *Bender.* Pursuant to that remand order we granted reconsideration. We have now reconsidered *Turngren* I in light of *Bender* and the additional briefs submitted by the parties, and adhere to our affirmance of the summary judgment dismissing the plaintiffs' case. We will again refer to the facts of the case to the extent required in connection with our discussion of the issues herein.

### DEFAMATION CAUSE OF ACTION

█ We turn first to our affirmance of the dismissal of the plaintiffs' defamation claim in *Turngren* I. Our affirmance of the trial court's dismissal of that claim was based on the immunity rule expressed in *Moloney*. As to that claim, however, we observe that while *Bender* holds there is no longer *absolute* immunity from such claims, a *qualified* immunity remains. The rule now is as follows:

> Although the release of information to the press and public by police officers is a very important function, we are persuaded that such communications do not rise to the level of such compelling public policy as to require an absolute privilege. We believe a qualified privilege will adequately protect police officers in releasing information to the public and press. It is then the plaintiff's burden to establish an abuse of that qualified privilege to recover. Since we view this function as important enough to afford police officers a qualified privilege, the standard of proving abuse of the privilege must necessarily be high.
>
> As we noted in *Mark v. Seattle Times,* [96 Wn.2d 473] at 492 n.5, [635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982)], proof of an abuse of a qualified privilege must be established by clear and convincing evidence, not simply by a preponderance of the evidence. The Restatement (Second) of Torts § 600, at 288 (1977), discusses abuse of qualified privileges and suggests that knowledge or reckless disregard as to the falsity of a statement is necessary to prove abuse of a qualified privilege. Other courts have adopted this rule that proof of knowledge or reckless disregard as to the falsity of a statement is necessary to establish abuse of a qualified privilege. We now adopt that standard as our own.

(Citations omitted.) *Bender,* at 601–02.

As we previously observed in connection with the plaintiffs' defamation claim, "the record does not raise a reasonable inference of malicious or reckless conduct on the part of the police at any stage of their investigation." *Turngren* I, at 86. Applying the qualified privilege test enunciated in *Bender* to the facts of this case, we again conclude that the plaintiffs did not establish any abuse by the defendants of

their privilege. Specifically, the plaintiffs did not make the requisite showing of "knowledge or reckless disregard as to the falsity" of any of the police statements to the press and public. Such statements, therefore, were privileged under the qualified privilege rule and the trial court's dismissal of the plaintiffs' defamation claim was proper.

MALICIOUS PROSECUTION CAUSE OF ACTION

We turn next to our affirmance of the dismissal of the remaining aspects of the plaintiffs' common law tort action in *Turngren* I. We did not uphold dismissal of those claims on the basis of the doctrine of governmental immunity, but did so because "[o]ur review of the record in this case demonstrates an absence of any issue of material fact in regard to the detectives' allegedly malicious or reckless conduct." (Footnotes omitted.) *Turngren* I, at 83–84. Although we adhere to that decision, further elucidation of this issue is required by the State Supreme Court's remand of this case for determination in the light of *Bender,* since *Bender* also dealt with malicious prosecution issues.

■ Cases such as this one, where wrongful issuance of a search warrant is alleged, are malicious prosecution actions. As the Supreme Court of Oregon observed, "[i]t is well supported by authority that to cause a search–warrant to be issued maliciously and without proper cause, is malicious prosecution for which an action will lie". *Nally v. Richmond,* 105 Or. 462, 466–67, 209 P. 871, 872–73 (1922). Although the Supreme Court of this State has not expressly defined a tort action based on the alleged wrongful issuance of a search warrant as a "malicious prosecution" action, that is the effect of its holdings in such cases. *See Ton v. Stetson,* 43 Wash. 471, 474, 86 P. 668 (1906); *Ladd v. Miles,* 171 Wash. 44, 45, 17 P.2d 875 (1932).

In order to add clarity to our analysis of this issue, and to our reconsideration in light of *Bender,* it will be helpful at the outset to first review the elements of a malicious prosecution cause of action as set forth in the leading case of *Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485,

497, 125 P.2d 681 (1942), and as recently reaffirmed by *Bender,* at 593—but to restate those elements in the context of search warrant procedures as distinguished from the criminal prosecutions, which were involved in *Peasley* and *Bender.*

In order to maintain a malicious prosecution action based on the alleged wrongful issuance of a search warrant, a plaintiff must allege and prove the following five elements:

1.  The search warrant claimed to have been wrongfully issued was obtained by the defendant;
2.  There was want of probable cause for the issuance of the search warrant;
3.  The search warrant was obtained through malice;
4.  The search of the plaintiff's person, premises or property conducted pursuant to the search warrant was unsuccessful; and
5.  The plaintiff suffered injury or damage as a result of the search.

Of the foregoing five elements, want of probable cause and malice constitute the gist of the action. *Peasley,* at 497; *Bender,* at 593.

As held in *Peasley,* the following rules apply to malicious prosecution actions. As with the above five elements of the cause of action, we have restated the rules declared in *Peasley* to the extent required to conform them to search warrant practice.

## Rule A

Actions for damages for malicious prosecution based on the alleged wrongful issuance of a search warrant are not favored in law, although they will be readily upheld when the proper elements have been presented. The reasons assigned for this attitude on the part of the courts are that it is to the best interest of society that those who possess contraband, stolen property, instrumentalities used in the commission of a crime, or other proper subjects of a search warrant, should be required to relinquish same to the appropriate law enforcement personnel, and that any citi-

zen who has good reason to believe that some person has such property should have the right to take proper steps to cause such property to be turned over to law enforcement personnel; and that in taking such steps the citizen who acts in good faith shall not be subjected to damages merely because the property sought by the search warrant was not found; yet, withal, that no person shall be accused of possessing contraband, stolen property, instrumentalities used in the commission of a crime or other proper subjects of a search warrant, and subjècted to the expense, vexation, and ignominy of a search merely for the gratification of another's malice or ill will. *Peasley,* at 496–97.

### Rule B

The burden of proof on the five elements rests upon the plaintiff. Moreover, the burden of proving want of probable cause never shifts to the defendant, but remains upon the plaintiff throughout the trial in the suit for malicious prosecution. Likewise, the burden of proof on the question of malice is not shifted to the defendant by proof of want of probable cause. *Peasley,* at 498.

### Rule C

In some cases, however, where the evidence is sufficient to establish want of probable cause, malice may be inferred from that fact when proven; but this is not a necessary deduction which must invariably be made. *Peasley,* at 498.

### Rule D

A prima facie case of want of probable cause is established by proof that the search was unsuccessful. This rule, though firmly established in this state, appears to be contrary to the weight of general authority. *Peasley,* at 498–99.

### Rule E

A prima facie case thus made by the plaintiff, however, may be rebutted, as in other cases, by the defendant's evidence. If it is so rebutted, then the plaintiff must by evidence affirmatively establish want of probable cause. *Peasley,* at 499.

## Rule F

If the defendant meets and overcomes a prima facie case of want of probable cause, then the issue of malice becomes immaterial, since proof of probable cause is a complete defense to an action for malicious prosecution. *Peasley,* at 499.

## Rule G

On the other hand, however, if the plaintiff successfully establishes want of probable cause for a defendant to obtain a search warrant directed against him, his premises or property, that in itself will not justify his recovery of damages for malicious prosecution. The plaintiff must go further and establish malice on the part of the defendant, for want of probable cause without malice is of no avail. *Peasley,* at 499.

## Rule H

If it clearly appears that the defendant, before procuring the issuance of a search warrant for the plaintiff's person, premises or property, made to the prosecuting attorney a full and fair disclosure, in good faith, of all the material facts known to him or her, and that the prosecuting attorney thereupon asked a magistrate for the search warrant and caused a search to be made pursuant to the search warrant, probable cause is thereby established as a matter of law and operates as a complete defense to a subsequent action by the person whose person, premises or property was searched. And the same rule prevails where such disclosure was made to a competent practicing attorney, and the search warrant was sought out upon his or her advice. *Peasley,* at 499–500; *Bender v. Seattle,* 99 Wn.2d 582, 593–94, 664 P.2d 492 (1983).

## Rule I

A corollary to Rule H is that if any issue of fact exists, under all the evidence, as to whether or not the person obtaining the search warrant did fully and truthfully communicate to the prosecuting attorney, or to his or her own

legal counsel, all the facts and circumstances within his or her knowledge, then such issue of fact must be submitted to the jury with proper instructions from the court as to what will constitute probable cause, and the existence or nonexistence of probable cause must then be determined by the jury. *Peasley,* at 500–01; *Bender,* at 594.

## Rule J

Malice as a term of law has a broader significance than that which is applied to it in ordinary parlance. The word "malice" may simply denote ill will, spite, personal hatred, or vindictive motives according to the popular conception, but in its legal significance it includes something more. It takes on a more general meaning, so that the requirement that malice be shown as part of the plaintiff's case in an action for malicious prosecution based on the alleged wrongful issuance of a search warrant may be satisfied by proving that the search warrant complained of was obtained from improper or wrongful motives or in reckless disregard of the rights of the plaintiff. Impropriety of motive may be established in cases of this sort by proof that the defendant obtained the search warrant of the plaintiff's person, premises or property: (1) without believing that he or she had the property sought thereby, or (2) primarily because of hostility or ill will toward him or her, or (3) for the purpose of obtaining a private advantage as against him or her. *Peasley,* at 502; *Bender,* at 594.

In dealing with this subject, the vital place search warrants occupy in the legal arsenal employed against deprivations by the lawless in our society must be clearly understood. The search warrant predates the United States Constitution and is recognized therein. U.S. Const. amend. 4. The United States Supreme Court has long expressed a strong preference that searches be made pursuant to search warrants. *Illinois v. Gates,* 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, 2331 (1983); *United States v. Ventresca,* 380 U.S. 102, 106–07, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965). As the Supreme Court has observed, the search warrant

process "interposes an orderly procedure" involving "judicial impartiality", *United States v. Jeffers,* 342 U.S. 48, 51, 96 L. Ed. 59, 72 S. Ct. 93 (1951). Under such procedures, a "neutral and detached magistrate", *Johnson v. United States,* 333 U.S. 10, 14, 92 L. Ed. 436, 68 S. Ct. 367 (1948), can make "informed and deliberate determinations", *Aguilar v. Texas,* 378 U.S. 108, 110–11, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), on the issue of probable cause.

With these fundamentals in mind, we then turn to the case at bench.

█  Plaintiffs seek reversal of the summary judgment for defendants on their malicious prosecution cause of action by asserting that the King County and City of Redmond detectives, both of whom signed the affidavit for the search warrant in this case, did not fully and truthfully disclose all of the facts known to them about the eyewitness–informant and that, therefore, there is an issue of fact as to the probable cause element of their cause of action. However, as we stated in *Turngren v. King Cy.,* 33 Wn. App. 78, 84, 649 P.2d 153 (1982) *(Turngren* I) "[c]onclusory allegations, speculative statements or argumentative assertions that unresolved factual matters remain are not sufficient to preclude an order of summary judgment. *Peterick v. State,* 22 Wn. App. 163, 181, 589 P.2d 250 (1977); *Dwinell's Cent. Neon v. Cosmopolitan Chinook Hotel,* 21 Wn. App. 929, 933, 587 P.2d 191 (1978)." Furthermore, in an action for malicious prosecution, the rule that all material facts must be disclosed does not apply to minor and collateral facts. *Brooks v. Bolde,* 11 Wn.2d 37, 42, 118 P.2d 193 (1941).

In their appellate briefs, plaintiffs speculate as to the number of contacts between the Redmond detective and the eyewitness–informant and assert, without factual basis in the record, that this number was grossly overstated by the detective.[1] They further speculate as to whether the

---

[1]Much of plaintiffs' argument in this regard centers on the affidavit for search warrant wherein it says that "Detective Niehl has indicated that he has known the informant for approximately one year and a half, that during that time he has

issuing magistrate questioned the informant when he appeared before him and, if so, about what. They make numerous argumentative assumptions concerning what the eyewitness–informant's motive might have been and how that motive might have influenced his truthfulness; and they rely heavily on a statement of a former Maryland police official containing conclusory allegations, which is not sworn to or under oath. This lack of specific facts to establish that a genuine issue of fact exists regarding the detectives' communications with the deputy prosecuting attorney and the issuing magistrate is, in our opinion, insufficient to get past the defendants' motions for summary judgment in face of the uncontroverted facts of this case.

■ Here, it is uncontroverted that in addition to following customary and proper procedures for procuring a search warrant, the King County and City of Redmond detectives brought the eyewitness–informant who had provided them with the information which was the basis of their request for a search warrant to an experienced deputy prosecuting attorney for King County who questioned him for approximately an hour and then himself prepared the affidavit for the search warrant. Following that, all of them (the eyewitness–informant included) went before a judge. It was that impartial magistrate who, after a hearing at which sworn testimony was taken, found probable cause for issuance of the search warrant. The detectives then themselves signed the affidavit in order to protect the confidentiality of the eyewitness–informant. Although no transcript was made of the hearing before the magistrate, it appears obvious that the reason the informant was personally taken before him

---

received more than 10 reports on criminal activity in the Redmond/Bellevue area which were personally verified by him through regular police channels independent of said informant; . . ." The speculation concerning the alleged incorrectness of that statement ignores Detective Niehl's affidavit filed in support of the motion for summary judgment in this proceeding wherein he unequivocally states as follows:

> In all there were some twelve reports given to me. In every report, I was able to verify the information through my own independent knowledge and other regular police channels.

(as well as to the deputy prosecuting attorney) was so that the magistrate could himself determine the credibility of the eyewitness–informant. As has often been said by our courts, the magistrate's "determination of probable cause should be given great deference by reviewing courts." *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981). The plaintiffs' showing is insufficient to raise a material issue of fact as to the "want of probable cause for the issuance of the search warrant" element of the malicious prosecution cause of action.

Malicious prosecution Rule D, above, must also be addressed. That rule states that a prima facie case of want of probable cause is established by proof that the search was unsuccessful. In the first place, we seriously question whether that rule should, as a matter of judicial policy, be held to apply in a civil action for malicious prosecution based on an unsuccessful search. That is because there is one very fundamental difference between a malicious prosecution action based on a criminal prosecution and one based on a search warrant. In a malicious prosecution action based on a criminal prosecution, the status of the defendant remains the same from the outset. That is, the defendant either did or did not commit the crime charged. In a malicious prosecution action based on an unsuccessful search, however, the status of the contraband or other personal property sought by the search warrant does not necessarily remain the same—the contraband or other personal property sought could well have been precisely where the person signing the affidavit for a search warrant said it was at the time the affidavit was sworn to, yet have been moved somewhere else by the time the search warrant was served. That is particularly true under the facts of the case at bench since the closet where the machine gun, hand grenades and other contraband were reported by the eyewitness–informant to have been stashed by the "warlord" for the Hells Angels motorcycle gang was found empty and the alleged "warlord" to have recently departed the premises.

The record herein also reflects that the person who

reportedly possessed the contraband sought by the search warrant may well have discovered, before the search was conducted, that the eyewitness–informant was talking to the police. If so, nothing would be more natural than for the possessor of the contraband, upon learning that the person he had shown it to was talking with the police, to flee and take the contraband with him. It is to be noted in this regard that all of the contraband sought in this case was readily portable.

In this same connection, if the law is that "the discoveries of an illegal search cannot be used to validate the probable–cause judgment upon which the legality of the search depends", *Whiteley v. Warden,* 401 U.S. 560, 567 n.11, 28 L. Ed. 2d 306, 91 S. Ct. 1031 (1971), as it is, how then can the converse logically be said to be true; that is, that the lack of any discovery by a search can be used to invalidate a court's finding of probable cause? While it would be entirely appropriate in a malicious prosecution action based on an alleged wrongful search for the trier of the fact to consider the negative search as evidence of lack of probable cause, it would not appear that by itself it should be considered as rising to the level where, as a matter of law, it constitutes a prima facie case of want of probable cause for the search.

We need not here decide, however, that malicious prosecution Rule D, above, is inapplicable here since even if we do consider that a prima facie case of want of probable cause was made out by the negative search, the plaintiffs' cause of action for malicious prosecution still fails because there were no specific facts set forth disclosing that a genuine issue of material fact exists regarding another necessary element of a malicious prosecution action, namely that "the search warrant was obtained through malice." As malicious prosecution Rule G, above, states, "want of probable cause without malice is of no avail."

Malicious prosecution Rule C, above, is that "[i]n some cases, however, where the evidence is sufficient to establish want of probable cause, malice may be inferred

from that fact when proven; *but this is not a necessary deduction which must invariably be made."* (Italics ours.) That rule is declared in similar language by a leading text, but that text then goes on to also state an important qualification to such rule:

Inferences—malice.

Though malice may not, as a rule, be presumed from want of probable cause, it has frequently been stated by the courts that malice may be inferred from proof of the want of probable cause. Such an inference is not a conclusion of law, but an inference of fact to be drawn by the jury. The inference, however, may not always be drawn from the lack of probable cause alone. *Where want of probable cause is itself proved by inference only, and it is sought to infer malice from the want of probable cause so inferred, a distinction must be made between a permissible inference from an inference and mere speculation.* It has been held, for instance, that where the only evidence of a want of probable cause is the inference that may be drawn from the voluntary dismissal of the original action, such an inference will not support the second inference that the defendant acted with improper motives in bringing such action; there must be some other direct or circumstantial evidence to support the inference of malice, failing which a finding of malice cannot be sustained.

(Footnotes omitted. Italics ours.) 52 Am. Jur. 2d *Malicious Prosecution* § 141, at 270 (1970). *Accord, Ton v. Stetson,* 43 Wash. 471, 475, 86 P. 668 (1906). *See also Alvarez v. Retail Credit Ass'n of Portland, Or., Inc.,* 234 Or. 255, 381 P.2d 499, 503–04 (1963); *Brodie v. Hawaii Automotive Retail Gasoline Dealers Ass'n,* 2 Hawaii App. 316, 631 P.2d 600 (1981), *rev'd on other grounds,* 65 Hawaii 598, 655 P.2d 863 (1982).

Here, even if we do apply Rule C and infer want of probable cause from the fact that the search did not turn up the contraband sought, such inference would not in this case support a further inference that "the search warrant was obtained through malice" and would be no more than speculation. To so speculate would be improper under the

authorities just noted, and would also violate this State's well established principle that "[p]resumption may not be pyramided upon presumption, nor inference upon inference." *Neel v. Henne,* 30 Wn.2d 24, 37, 190 P.2d 775 (1948).

It should be further observed that if we were to here infer lack of probable cause from the fact that the search pursuant to the search warrant was unsuccessful; and then, based on that inference, to further infer that the search warrant was obtained through malice; and to thus leave King County and the City of Redmond exposed to liability for malicious prosecution based thereon, this would amount to holding that the municipalities of this state are the *guarantors* that all search warrants obtained by their law enforcement officers will be successful. So far as we are informed, that is not the law of any jurisdiction in the United States. To so hold would also fly in the face of the rule that "[a]ctions for damages for malicious prosecution based on the alleged wrongful issuance of a search warrant are not favored in law, . . ." See malicious prosecution Rule A, above.

To hold that the municipalities of this state (and their taxpayers) are the guarantors of every search warrant obtained by their law enforcement officers would be unwise judicial policy. It would impose an enormous burden on them, the likely result of which would be the virtual destruction of the search warrant as an effective legal tool for law enforcement. Such a holding would also be highly inappropriate at the very time the State Supreme Court has placed increasingly heavy emphasis on the necessity for search warrants in search cases. *See State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983).

We will not again address the other issues decided in *Turngren v. King Cy.,* 33 Wn. App. 78, 649 P.2d 153 (1982) (*Turngren* I) herein since they are not within the scope of the State Supreme Court's order of remand.

We again affirm the trial court's summary judgment dis-

334

missing the plaintiffs' action.

DURHAM, C.J., concurs.

DURHAM, C.J. (concurring)—The dissenting opinion requires that this separate concurring opinion be added.

We are here responding to the State Supreme Court's order remanding *Turngren* I to us for determination in light of its more recent decision in *Bender v. Seattle,* 99 Wn.2d 582, 664 P.2d 492 (1983). Many of the factual matters referred to in the dissent herein were dealt with in our earlier *Turngren* I majority opinion. For example, as we there observed:

> The unsworn and unsigned statement of the informant reported by counsel for the Turngrens is hearsay, admissible only to impeach the credibility of the informant's deposition testimony and, as such, cannot create an issue of material fact. Further, the unsworn "affidavit" of the Turngrens' expert witness, Robert di Grazia, fails to raise any genuine issue of material fact concerning the detectives' malicious or reckless conduct since it is based on conclusory allegations without the required detailing of the specific facts underlying his opinion. CR 56(e). Moreover, even if the expert's conclusory allegations are taken as true, the "affidavit" raises no more than an inference of negligent investigation and that is not sufficient to preclude summary judgment in a case of this kind.

(Citations omitted.) *Turngren v. King Cy.,* 33 Wn. App. 78, 83 n.3, 649 P.2d 153 (1982).

Furthermore, this court has never used allegations of *damages* by plaintiffs, however emotionally charged, as proof of *liability*. This case involves a summary judgment on the *liability* issue entered by the trial court pursuant to CR 56, and that is the issue before us.

RINGOLD, J. (dissenting)—Regretfully, I must again dissent from the majority opinion for reasons similar to those discussed in my dissent in *Turngren v. King Cy.,* 33 Wn. App. 78, 649 P.2d 153 (1982) (*Turngren* I). The majority opinion mistakes the basic function of an appellate court in

reviewing a motion for summary judgment. Rather than determining whether there are genuine issues of material fact requiring consideration by a trier of fact, the majority opinion resolves these factual issues in favor of the defendants.

The facts of the case are given in detail in *Turngren* I. Briefly, the Turngrens[2] filed the present action alleging malicious prosecution, defamation, negligence, excessive use of force and other causes against King County, the City of Redmond, and other defendants, in connection with the issuance and execution of a search warrant. The Turngrens alleged that Detectives Niehl and Rutherford obtained the warrant based on the statements of an informant, later identified as Robert Smith, who told them he saw 4 M–16 automatic rifles, 15 hand grenades, and a pipe bomb in the Turngrens' home. At 10:30 p.m. approximately 30 officers, including a SWAT team, sharpshooters, and federal DEA officers, converged on the Turngrens' home to execute the warrant. Some of these officers contacted the Turngrens' neighbors and told them to leave the area because there might be "trouble in the neighborhood."

The Turngrens further alleged that the officers made Mr. and Mrs. Turngren and their 10–year–old daughter Marri come out of the house and stand at gunpoint on the front lawn while the house was searched. Finally, they alleged that the police information officer issued defamatory press releases about the incident. No contraband was found in the search.

The Turngrens submitted an affidavit stating that the informant, Robert Smith, said that he lied when he told the officers that he had seen weapons in the Turngrens' home, and that he told the officers before the raid that the Turngrens' house was the "wrong one." The affidavit further stated that, according to Smith, Detective Niehl told him that it was "too late" because Niehl had already "stuck his

---

[2]Mr. Turngren is disabled and retired and Mrs. Turngren is a former employee of the Kirkland Police Department.

neck out" by overstating Smith's credibility. In a later deposition Smith admitted making these statements, but claimed that they were false and that he told the detectives the truth. The Turngrens also alleged that Detective Niehl misrepresented Smith's credibility as an informant, seriously overstating the number of prior verified reports he had received from Smith.

After a year of discovery, the trial court granted the defendants' motion for summary judgment on the grounds of governmental immunity; this court affirmed. The Supreme Court took review, but remanded to us for reconsideration in light of *Bender v. Seattle,* 99 Wn.2d 582, 664 P.2d 492 (1983).

There are several well established principles guiding appellate review of a summary judgment. The reviewing court considers the same record as that before the trial court. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Wilson,* at 437. Now that the Supreme Court has clarified, in *Bender,* that governmental immunity is not applicable, the only issue properly before us is whether there are genuine issues of material fact in the affidavits, depositions, and other material before the court. CR 56(c); *Blenheim v. Dawson & Hall, Ltd.,* 35 Wn. App. 435, 440, 667 P.2d 125 (1983).

## DEFAMATION

A word must be said about the majority's assertion that the defamation claim is barred by a "qualified privilege" because the plaintiffs did not make the requisite showing of "'knowledge or reckless disregard as to the falsity' of any of the police statements to the press and public." Majority opinion, at 322–23. Knowledge and reckless disregard are the type of facts which generally must be inferred from circumstantial and other evidence. The rule stated in *Preston v. Duncan,* 55 Wn.2d 678, 681–82, 349 P.2d 605 (1960) is particularly appropriate:

It seems obvious that in situations where, though evidentiary facts are not in dispute, different inferences may be drawn therefrom as to ultimate facts such as intent, knowledge, good faith, negligence, et cetera, a summary judgment would not be warranted.

The evidentiary facts in this case are disputed and different inferences may be drawn from the facts; the existence of malice or reckless disregard is a disputed question of fact. Summary judgment is therefore inappropriate.

### TORT CLAIMS

The majority opinion discusses burden of proof and the quality and quantity of proof necessary to win defamation and malicious prosecution actions. These issues are not relevant to this appeal. The relevant "burden" here is the burden the defendants bear, as the moving party, of showing by uncontroverted facts that there are no factual issues and that they are entitled to judgment as a matter of law. *LaPlante v. State,* 85 Wn.2d 154, 158, 531 P.2d 299 (1975). The moving party has this burden regardless of which party would have the burden of proof on the issue at a trial on the merits. *State ex rel. Bond v. State,* 62 Wn.2d 487, 490, 383 P.2d 288 (1963).

The real question to be decided by this court on reviewing a summary judgment is whether there are genuine issues of fact. CR 56(c); *Wilson v. Steinbach, supra.* The rule previously quoted from *Preston v. Duncan* is also applicable to the other tort claims. The record contains a factual basis from which reasonable inferences can be drawn supporting the plaintiffs' claims, making summary judgment inappropriate.

Similar arguments apply to the majority's discussion of the absence of probable cause, an element of the malicious prosecution claim. An unsuccessful search establishes a prima facie case of lack of probable cause. *Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 125 P.2d 681 (1942). We need not, and should not, determine here whether "judicial policy" makes it desirable to limit the applicability of "malicious prosecution Rule D" as the

338

majority calls it, or whether application of the rule will make the State the "guarantor" of all search warrants. Nor must we determine whether, as the majority suggests, the alleged "warlord" learned of the impending search and fled, taking his arsenal with him, or whether he was an innocent and aggrieved citizen. These are matters for a jury to decide.

Rather than contumaciously refusing to give the plaintiffs their day in court, we should reverse the dismissal of the actions by summary judgment and remand this matter for trial.

Review granted by Supreme Court December 7, 1984.