**Travis CLARK and Peggy Clark, Appellants,**

**v.**

**James BROWN, Respondent.**

**No. 17274.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 2, 1991.

Richard L. Anderson, Kimberling City, for appellants.

Virginia L. Fry, Carol T. Aiken, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for respondent.

CROW, Judge.

Plaintiffs Travis Clark and Peggy Clark appeal from an order setting aside a default judgment in their favor against defendant James Brown for $24,000 actual damages and $100,000 punitive damages.

A history of the case to August 7, 1990, appears in *Clark v. Brown*, 794 S.W.2d 254 (Mo.App.1990), where this Court declared void an order of the trial court *denying* defendant's motion to set the judgment aside. That opinion must be read as a preface to this one.

After remand, the trial court[1] heard further evidence, considered the transcript of all earlier evidence, and with commendable industry set forth its reasons for setting the judgment aside.

Plaintiffs' brief presents five points relied on; they require a synopsis of the case supplementing the account in our earlier opinion.

---

1. The Honorable Scott S. Sifferman, who replaced the original judge, The Honorable Robert McPherson.

The claim on which plaintiffs were awarded judgment was for malicious prosecution. Plaintiffs' petition averred defendant made a false affidavit August 15, 1987, which resulted in the issuance of a search warrant for plaintiffs' "residence and real estate."

Defendant's affidavit said, among other things:

"... James J. Brown, Chief Investigator of the Humane Society of Missouri ... states as follows:

... I have engaged in undercover investigations of dog fighting from 1983 to the present. During this investigation I attended three dogfights conducted by Travis and Herman Clark at several locations in Stone County. One fight being held in 1983, and two fights being held in 1985, which the two fight [sic] of 1985 were held at Travis Clark's farm.

While attending the dog fights at Travis Clark's farm in 1985 I observed several devices used in training and fighting of dogs. Some of the items observed were breaking sticks, scales, syringes, a treadmill, a 'Jenny', and a pit used for fighting.

On August 10th, 1987 while doing further undercover investigations, I observed on Travis Clark's farm a 'Jenny' (an exercise ring), an area constructed of walls approximately fifteen feet in diameter, which I believe to be a fighting pit, and approximately forty Pit Bull dogs....

On August 14th, 1987 I and Deputy Sheriff Jerry Dodd, Stone County Sheriff's Dept., conducted a fly over of the Clark brother properties. I again saw the 'Jenny' and approximately forty dogs and dog houses at Travis Clark's property....

At the three fights I have attended in Stone County I saw what I believed to be a large amount of narcotics used on the dogs and used by humans. At the places where the dogs are trained and fought you will usually find choke collars, breaking sticks, fight contracts, copies of fighting rules and regulations, trophies and awards from past fights, records of fights for each dog, receipts of subscriptions or requests to other fighters publications which advertise dogs for sale....

During a raid made in Laclede County, Missouri, by the Humane Society of Missouri, Travis Clark's name came up several times as a nationally known dog fighter, he is knon [sic] among dog fighters throughout the United States as a breeder and trainer of Pit Bulls."

A search warrant was issued by an associate circuit judge authorizing a search of plaintiffs' property and seizure of any item constituting "evidence of a criminal offense of training, keeping, or possessing dogs for the purpose of fighting the same for amusement or gain," [2] including training equipment, narcotic substances, contracts for fights, copies of fighting rules, records of dogfights, trophies, awards, bills of sale of fighting dogs, advertisements, and breeding records.

Law enforcement officers executed the warrant August 15, 1987, by searching plaintiffs' property and seizing numerous items. No criminal charge was filed against either plaintiff after the search.

Plaintiffs filed this suit June 17, 1988. Summons was sent to the City of St. Louis for service on defendant. It was returned showing personal service on defendant June 21, 1988. No responsive pleading was filed, and default judgment was entered October 5, 1988.[3]

On November 10, 1988, defendant filed a motion to set the judgment aside per Rule 74.05(c).[4] The first of two evidentiary hearings on defendant's motion occurred March 1, 1989, resulting in the order ultimately set aside by this Court in its earlier

---

2. The crime, a class D felony, can be committed various ways. § 578.025.1, RSMo 1986.

3. Our earlier opinion states judgment was entered August 17, 1988. 794 S.W.2d at 255. That was the date plaintiffs appeared in the trial court with their lawyer and presented evidence

about damages. The judgment was signed by the trial court and filed October 5, 1988.

4. Missouri Rules of Civil Procedure (19th ed. 1988). Defendant's motion contained an alternative request to amend the proof of service.

opinion. The second evidentiary hearing occurred November 7, 1990. In discussing the evidence pertinent to plaintiffs' assignments of error, we include evidence presented at both hearings.

We first consider plaintiffs' fifth point. It reads:

"The trial court erred ... in sustaining the defendant's motion under Rule 74.-05(c) to set aside default judgment, in that said motion was not made within a reasonable time, and therefore the court abused its discretion in setting aside the default judgment...."

Rule 74.05(c) reads:

"Upon motion stating facts constituting a meritorious defense and for good cause shown ... a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process...."

In support of their fifth point, plaintiffs direct us to written suggestions filed by defendant's lawyers simultaneously with defendant's motion to set aside the judgment. Those suggestions aver one of defendant's lawyers, Todd Thornhill, learned in late August, 1988, "that a judgment had been taken against defendant."[5] The suggestions continue:

"Repeated phone calls to the Clerk's Office of Stone County inquiring as to whether judgment had been entered in this matter were met by responses stating that judgment had in fact *not* been entered. Defendant's attorney would state that he was cognizant that a judgment had been taken against defendant and was diligent in his attempt to find out the date of judgment entry while concurrently pursuing an investigation in this matter in order to prepare this motion and these suggestions for filing. Since, even as late as October 4, 1988, correspondence with the Clerk of the court of Stone County indicated that judgment had, in fact, not been entered in this matter, defendant's attorney continued his investigation of the facts underlying this matter while keeping in mind the 'reasonable time' requirements of rule 74.05."

The record shows that on October 5, 1988, the Clerk of the Circuit Court mailed defendant a copy of the docket entry of August 17, 1988, together with a copy of the judgment entered October 5, 1988. The correspondence was addressed to defendant at the office of the Humane Society of Missouri in St. Louis.

The suggestions in support of defendant's motion to set aside the judgment allege lawyer Thornhill received correspondence on or about October 12, 1988, from Terence Mueller, counsel for the Humane Society, stating Mueller had received the correspondence from the court clerk regarding the entries of August 17, 1988, and October 5, 1988.

Plaintiffs also direct us to the testimony of a deputy sheriff of the City of St. Louis. The deputy testified he handed the summons to defendant on the morning of June 21, 1988, at the Humane Society office in St. Louis.

Defendant testified he could not say whether the deputy served him.[6] Defendant explained he was "on the road quite a bit," and that if a summons or subpoena for him was brought to the Humane Society office in his absence, it would be left with the secretary to Donald H. Anthony, general manager of the Society, or with Anthony himself. Defendant avowed he

---

5. The only docket entry in "late August," 1988, was the entry reciting the appearance of plaintiffs and their lawyer in the trial court August 17, 1988, and the proceedings that date (footnote 3, *supra*). The entry ends: "At the close of the evidence, Court finds the issues for plaintiffs and against the defendant on plaintiffs' petition. Plaintiff[s] to provide judgement in accordance with findings."

6. This testimony was given March 1, 1989, eight months after the purported service. Suggestions in support of defendant's request to amend the proof of service (footnote 4, *supra*) maintained he was not served. On November 7, 1990, defendant's lawyers abandoned that contention in the trial court.

first learned of this suit in October, 1988, upon encountering Anthony in the parking lot at the Society's office. Anthony told defendant he had been sued and, "Go up and see the secretary." Defendant did so, and she showed him the papers.

On cross-examination, defendant fixed the date of the above incident as about a week before his wages were garnished. Court records show a writ was served on the Humane Society garnishing defendant's wages November 10, 1988.

Plaintiffs point out defendant executed an affidavit October 31, 1988, in support of his motion to set aside the judgment. On that date he obviously knew judgment had been entered. As noted earlier, defendant's motion to set the judgment aside was filed November 10, 1988.

Plaintiffs assert the delay between the date defendant or lawyer Thornhill learned of the judgment and the date defendant filed his motion to set it aside was unreasonable, hence defendant failed to comply with the "reasonable time" requirement of Rule 74.05(c). Plaintiffs cite no case examining this requirement, and we are aware of none.

■ Setting aside a default judgment is within the trial court's discretion, and its ruling will not be disturbed on appeal unless abuse of discretion is found. *Gibson by Woodall v. Elley,* 778 S.W.2d 851, 853 (Mo.App.1989); *Krueger v. Perez,* 764 S.W.2d 173, 174 (Mo.App.1989); *First Missouri Bank of St. Francois County v. Patterson,* 696 S.W.2d 800, 801[1] (Mo.App. 1985). The discretion not to set aside is narrower than the discretion to set aside. *Gibson,* 778 S.W.2d at 853–54; *Krueger,* 764 S.W.2d at 174[1]; *First Missouri Bank,* 696 S.W.2d at 801[1]. Thus, an appellate court is more likely to interfere with a trial court's decision when the motion to set aside the judgment has been denied. *Gibson,* 778 S.W.2d at 854; *Krueger,* 764

S.W.2d at 174[1]; *First Missouri Bank,* 696 S.W.2d at 801.

■ Here, lawyer Thornhill should arguably have acted swifter in filing defendant's motion to set the judgment aside. Thornhill evidently knew on October 12, 1988, that the trial court had signed and filed the judgment a week earlier. The 29–day delay between October 12, 1988, and the filing of the motion to set the judgment aside November 10, 1988, suggests the matter was not handled as expeditiously as it might have been.[7]

However, we are unpersuaded the trial court erred in failing to declare the delay unreasonable. Defendant and lawyer Mueller were in St. Louis, lawyer Thornhill was in Springfield, and the case was in Galena. Nothing in the record indicates defendant or his lawyers delayed moving to set the judgment aside to gain any tactical advantage. Defendant's motion was filed 36 days after formal judgment was entered. The extensive suggestions that accompanied the motion required some time for preparation.

Given these circumstances, and mindful of the discretion with which a trial court is vested in setting aside a default judgment, we cannot convict the trial court of error in failing to hold defendant violated the "reasonable time" requirement of Rule 74.05(c). Plaintiffs' fifth point is denied.

■ We next address plaintiffs' third point. It reads:

"The trial court erred . . . in sustaining the defendant's motion . . . to set aside default judgment, in that defendant's conduct allowing entry of default judgment was conduct 'recklessly designed to impede the judicial process', and therefore the court abused its discretion in setting aside the default judgment. . . ."

Donald H. Anthony, general manager of the Humane Society of Missouri, testified about the Society's procedure in 1988 when

---

7. Plaintiffs' argument implies the judgment was entered August 17, 1988, the date the trial court heard evidence about damages (footnote 3, *supra*). It is obvious from the docket entry that date that the trial court expected plaintiffs' lawyer to prepare a judgment in accordance with the trial court's findings on damages and submit the judgment to the trial court at a later date for entry. That occurred October 5, 1988. *See: Munn v. Garrett,* 666 S.W.2d 37, 39 (Mo.App. 1984).

"legal process" was brought to the Society's office for service. If Anthony was present, the officer would serve him. If Anthony was gone, the officer would serve Anthony's secretary, Stacy Murphy. If the papers were for a Society employee, the employee would be served if present. If absent, the papers would be left with Ms. Murphy. Regardless of who received the papers, they would be turned over to Ms. Murphy, and it was her responsibility to make a copy and send it to the Society's attorney. Thereafter, Ms. Murphy would "be the liaison between the employee and the attorney."

Anthony avowed he learned of this suit when the Society's finance officer showed him a garnishment on defendant's wages. Anthony began an investigation. The summons and petition were found in files under Ms. Murphy's control. The Society's lawyer had not been notified about the suit. As a result of the blunder, the Society fired Ms. Murphy. Anthony explained, "That's the first time that type of thing had ever happened, and we decided we didn't want to take a chance on it happening again."

The trial court's findings included this:

"The Court finds ... defendant was served with petition and summons, and pursuant to the established procedure of his employer ... immediately took the summons and petition to his employer's secretary Stacey Murphy. The Court finds that it was the secretary's duty to transmit the legal documents to the company attorney but that she mistakenly failed to forward the summons and petition to the attorneys. The Court finds the defendant's actions constitute good cause for not having filed a response to plaintiffs' petition since it was caused by a mistake or conduct that was not intentionally or recklessly designed to impede the judicial process.

The Court further finds the default in this case resulted from internal mishaps by the Humane Society of Missouri which were inconsistent with any inten-

tional behavior by defendant or his employer."

In arguing their third point, plaintiffs assert defendant has changed his position during this litigation. Plaintiffs emphasize defendant filed an affidavit in the trial court November 10, 1988, concomitantly with his motion to set aside the judgment. In that affidavit, defendant denied being served with summons in this case June 21, 1988, or any other time. Thereafter, at the hearing March 1, 1989, following the deputy sheriff's testimony regarding service, defendant testified he could not say whether the deputy served him. Plaintiffs also remind us defendant failed to appear at the hearing November 7, 1990, ignoring a subpoena by them.[8]

Plaintiffs' argument, as we fathom it, is that such conduct manifests a reckless design to impede the judicial process.

The flaw in plaintiffs' argument is that the conduct they assail occurred *after* the default judgment was entered, while their third point attacks defendant's conduct in *allowing* entry of the default judgment. Obviously, any conduct allowing entry of the default judgment necessarily occurred *before* the conduct complained of in plaintiffs' argument. Neither plaintiffs' third point nor the argument that follows it identifies any behavior by defendant *before* entry of the default judgment allegedly constituting conduct recklessly designed to impede the judicial process. Consequently, plaintiffs' third point supplies no basis for disturbing the order setting aside the judgment.

■ We turn now to plaintiffs' fourth point. It reads:

"The trial court erred ... in sustaining defendant's motion ... to set aside default judgment, in that the court's factual finding that the defendant 'immediately took the summons and petition to his employer's secretary' is unsupported by substantial and credible evidence and/or

**8.** At the outset of that hearing, the trial court asked defendant's lawyers whether defendant was appearing in person. One of defendant's lawyers replied, "No, Your Honor, he's not

here." In his brief, defendant avers he "was available during this hearing." Defendant fails to direct us anywhere in the record confirming this proclamation.

is against the weight of the credible evidence, and therefore the trial court's finding that such action constituted 'good cause for not having filed a response to plaintiff's [sic] petition' is without basis in fact, and the court abused its discretion in setting aside the default judgment...."

Plaintiffs point out Ms. Murphy has never testified, defendant did not testify he turned the summons in this case over to her, and Anthony had no personal knowledge about that subject. Consequently, insist plaintiffs, the trial court's finding attacked in their fourth point lacks evidentiary support.

We disagree. As reported earlier, the deputy sheriff testified he handed the summons to defendant June 21, 1988, at the Humane Society office. Anthony testified that when the Society's finance officer showed him a garnishment on defendant's wages, he (Anthony) commenced an investigation. The summons and petition were found in files under Ms. Murphy's control. The trial court, as trier of the facts, was entitled to believe this evidence. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988). There was no testimony that the deputy handed the papers to Ms. Murphy. The only plausible inference from the evidence recounted in this paragraph is that defendant, upon receiving the summons from the deputy, turned it over to Ms. Murphy pursuant to the Society's office procedure. Plaintiffs' fourth point is meritless.

■ Their first point, which we now address, reads:

"The trial court erred ... in sustaining the defendant's motion ... to set aside default judgment, in that defendant, having admitted wilfull [sic] conduct constituting an intentional fraud upon the court below in the very matter being the subject of the default judgment, was not entitled to obtain relief in equity, and the trial court's grant of equitable relief was an abuse of its discretion."

This point is based on some of defendant's testimony at the hearing March 1, 1989. Defendant testified he drove to plaintiffs' property about a week before he executed his affidavit for the search warrant. On that visit, defendant saw none of the items described in his affidavit. Later in his testimony, this colloquy occurred:

"Q. ... Then, on August 14, 1987, according to your affidavit, you flew over the property in a plane, and you say you saw a jenny from the plane and approximately 40 dogs and dog houses at Travis Clark's property; isn't that—

A. Right.

Q. —the nature of your—isn't that what your affidavit says?

A. Right.

.    .    .    .    .

Q. And that statement in that affidavit's false; is it not?

A. It is, yes."

Defendant also testified that while he was preparing his affidavit, a deputy sheriff told him it would be "stronger" to say "dogs" instead of "dog houses," so defendant made that change and signed the affidavit. Additionally, in regard to the statement in his affidavit that he attended two dogfights at Travis Clark's farm in 1985, defendant admitted he "did not know whether they were [on] his property or whose property they were [on]."

Plaintiffs begin the argument on their first point by stating our earlier opinion in this case characterized a proceeding under Rule 74.05(c) "as being in the nature of an independent action in equity." Plaintiffs emphasize a court of equity will not aid one who comes into court with unclean hands. *Moore v. Carter,* 356 Mo. 351, 201 S.W.2d 923, 929[2] (1947). Plaintiffs maintain that inasmuch as defendant admitted portions of his affidavit in support of the application for the search warrant were false, he is ineligible for relief from the default judgment.

It is unnecessary to determine the extent, if any, to which a proceeding under Rule 74.05(c) is governed by the equitable maxim relied on by plaintiffs. In all of the cases they cite except one, the maxim was applied against a litigant seeking *affirmative relief against his adversary* in a pro-

ceeding in equity. In the remaining case, *Boeckmann v. Smith*, 238 Mo.App. 855, 189 S.W.2d 449 (1945), a party against whom a default judgment had been entered brought a suit in equity to set the judgment aside and enjoin an execution sale. Affirming that relief, the appellate court stated a party should not be denied a remedy where the application for relief is made seasonably and with clean hands. 189 S.W.2d at 450. The court was not called upon to decide whether such relief would have been proper had the judgment debtor's hands been tarnished.

In the instant case, defendant seeks no affirmative relief against plaintiffs; he requests only an opportunity to defend himself against plaintiffs' claim for damages in a trial on the merits.

■ Earlier, we learned that setting aside a default judgment is within the trial court's discretion, and that the discretion to set aside is broader than the discretion not to set aside. This is because of the distaste our system has for default judgments. *Gibson*, 778 S.W.2d at 854; *Murray v. Sanders*, 667 S.W.2d 426, 427–28 (Mo.App. 1984). Furthermore, a litigant will be barred from relief by the "clean hands" maxim only when he has been guilty of unlawful or inequitable conduct in the matter with relation to which he seeks relief. *Shrout v. Tines*, 260 S.W.2d 782, 786[2] (Mo.App.1953). Here, the relief defendant seeks is an order setting aside the default judgment. His alleged misconduct in executing the affidavit on which the search warrant was based was unrelated to entry of the default judgment.

While defendant's testimony of March 1, 1989, may cause him some discomfort at a future trial, we cannot convict the trial court of abusing its discretion in setting aside the judgment in the face of such testimony. Plaintiffs' first point is denied.

Plaintiffs' second point, the only one not yet addressed, reads:

"The trial court erred ... in sustaining defendant's motion ... to set aside default judgment, in that the court's finding that a meritorious defense existed was based upon either a misapplication or misunderstanding of controlling law related to the necessary elements of an action for malicious prosecution; had the law been correctly applied, defendant demonstrated no meritorious defense, and therefore the court abused its discretion in sustaining said motion...."

Pertinent to this point, the trial court's findings included this:

"The Court further finds the existence of a meritorious defense available to defendant on plaintiffs' claims. In particular, the evidence ... shows that there was never a commencement of a prosecution against plaintiff and never a termination of any such prosecution in plaintiffs' favor."

In *Burnett v. Griffith*, 769 S.W.2d 780, 783–84[3] n. 2 (Mo. banc 1989)—a malicious prosecution suit based on instigation of charges of violating municipal ordinances—the Supreme Court stated a person suing on a theory of malicious prosecution must plead and prove six elements: (1) the commencement of a prosecution against the plaintiff; (2) instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged.

Here, as we have seen, no criminal charge was ever filed against either plaintiff. Inasmuch as the first element of a malicious prosecution claim is commencement of a prosecution against the claimant, defendant insists the trial court correctly ruled he has a meritorious defense.

Plaintiffs respond that the first element of a malicious prosecution claim is the instigation of a judicial proceeding. *See:* MAI 23.07 [1980 Revision]. Plaintiffs maintain the issuance of a search warrant is a judicial proceeding and there is only a "subtle difference" between it and an arrest warrant in a prosecution for violating a state law or municipal ordinance. Consequently, argue plaintiffs, the trial court erred in holding the lack of a criminal charge against them afforded defendant a meritorious defense.

Plaintiffs' theory, as we comprehend it, is that the absence of a criminal charge was the equivalent of a termination of the search warrant proceeding in their favor, and there is no difference between these circumstances and a case where a criminal prosecution is commenced against an accused and ultimately resolved in his favor.

Plaintiffs are evidently attempting to apply the elements of a cause of action for malicious prosecution *based on the commencement of a criminal prosecution* to a cause of action for malicious prosecution *based on the issuance of a search warrant.*

Our research reveals no Missouri case deciding whether a cause of action for malicious prosecution can be based on activity that precipitates the issuance of a search warrant. However, the subject has been addressed by the Court of Appeals of Washington in *Turngren v. King County, Dept. of Pub. Saf.,* 38 Wash.App. 319, 686 P.2d 1110 (1984), *rev'd on other grounds,* 104 Wash.2d 293, 705 P.2d 258 (banc 1985). There, the court held that to maintain a malicious prosecution action based on the alleged wrongful issuance of a search warrant, a plaintiff must allege and prove five elements:

1. The search warrant claimed to have been wrongfully issued was obtained by the defendant;
2. There was want of probable cause for the issuance of the search warrant;
3. The search warrant was obtained through malice;
4. The search of the plaintiff's person, premises or property conducted pursuant to the search warrant was unsuccessful; and
5. The plaintiff suffered injury or damage as a result of the search. 686 P.2d at 1114.

The logic of *Turngren* is obvious and unassailable. A search warrant could be issued for premises occupied or frequented by several persons, contraband could be found, and yet no criminal charge could be brought because of insufficient evidence linking a specific person with the contraband. To hold the absence of a criminal charge supports a malicious prosecution claim in such circumstances would be absurd. The purpose of a search warrant is to permit a search for the item or items described in it. If they are found, the search is successful. Whether a criminal charge can be supported against anyone as a result of the endeavor depends on factors beyond what is found.

In the instant case, both sides fail to recognize the difference between a malicious prosecution suit based on the commencement of a criminal prosecution and a malicious prosecution suit based on the issuance of a search warrant. The counts of plaintiffs' petition upon which they were awarded actual and punitive damages pled plaintiffs were not arrested as a result of the search, and plaintiffs were guilty of none of the offenses of which defendant accused them. In this Court, plaintiffs have argued the absence of a criminal prosecution against them demonstrates an outcome of the search warrant proceeding in their favor. Plaintiffs' position is untenable, as demonstrated by *Turngren.*

■ If Missouri recognizes a cause of action for malicious prosecution based on the wrongful issuance of a search warrant—an issue we need not decide—it is obvious one element must be that the search was unsuccessful, i.e., the item or items described in the warrant were not found.

■ Here, the record discloses the officers seized numerous items during the search of plaintiffs' property. Some were inventoried; some were not. No inventory of the property seized accompanies the record, and the evidence mentions only a few of the items. It is thus impossible to determine whether any of the items seized were described in the search warrant. However, we are unwilling to infer none of them were, as that would assume everything the officers took was unauthorized by the warrant.

The "meritorious defense" provision of Rule 74.05(c) requires only "that some showing be made of the existence of at least an arguable theory from which a de-

fense may be made." *Gibson*, 778 S.W.2d at 855. Inasmuch as the record here shows numerous items were seized, there is some showing of the existence of at least an arguable theory from which a defense may be made. Consequently, we deny the contention in plaintiffs' second point that the "meritorious defense" requirement of Rule 74.05(c) was unmet.

We hold the trial court committed no error in setting aside the default judgment. It is immaterial that the trial court followed a different route than us in reaching its decision. If a trial court's ruling is correct, it will not be disturbed on appeal because the court may have given a wrong or insufficient reason for it. *Producers Produce Co. v. Industrial Commission*, 365 Mo. 996, 291 S.W.2d 166, 170[1] (banc 1956).

The order setting aside the default judgment is affirmed.

MAUS and SHRUM, JJ., concur.